UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFREY NEWMAN,                              14-CV-278-WMS-MJR
RICHARD WERTH,                               REPORT AND RECOMMENDATION
JEFFREY SHAWVER, and
TRACI HANER,

                        Plaintiffs,

        -v-

COUNTY OF NIAGARA,

                        Defendant.
_____

        This case has been referred to the undersigned by the Hon. William M. Skretny

for all pre-trial matters, including preparation of a report and recommendation on

dispositive motions.  (Dkt. No. 30).  Before the Court are plaintiffs' motion for summary

judgment (Dkt. No. 29) and defendant's motion for summary judgment (Dkt. No. 31).

Oral argument was held on May 18, 2016.  For the following reasons, it is

recommended that both motions be denied.

## BACKGROUND

        Plaintiffs Jeffrey Newman, Richard Werth, Jeffrey Shawver, and Traci Haner

(collectively, "plaintiffs") commenced this action against the County of Niagara (the

"County") in 2014 alleging that it failed and refused to allow them to use their

compensatory leave time in a timely manner, in violation of the Fair Labor Standards

Act (the "FLSA").  (Dkt. No. 1).  The following facts are taken from the pleadings and

motion papers in this action, including the parties' respective statements of undisputed facts. (Dkt. No. 29-62) (plaintiffs' statement); Dkt. No. 31-1 (the County's statement)).[1]

Plaintiffs are corrections officers at the Niagara County Jail. (Dkt. 31-1 ¶1). They are jointly employed by the County and the County Sheriff. (*Id.* ¶2). The County currently employs 129 full-time corrections officers at the Jail. (*Id.* ¶4). Corrections officers are assigned to work one of three shifts: the day shift (7:45 a.m. to 3:45 p.m.), the afternoon shift (3:45 p.m. to 11:45 p.m.), or the midnight shift (11:45 p.m. to 7:45 a.m.). (*Id.*). All four plaintiffs are currently assigned to the day shift. (*Id.* ¶5). Three Sergeants — Gary Zalewski, Francis Giles, and Daniel Greenwald — work the day shift and are responsible for scheduling corrections officers for duty. (Dkt. No. 29-62 ¶16; Dkt. No. 32 ¶16).

Corrections officers at the Jail are assigned to a number of different positions, or "posts," on each shift. (Dkt. No. 31-1 ¶26). The New York State Commission of Correction has prepared a "Staffing Analysis for the Niagara County Jail" setting forth the minimum number of posts that must be covered in order to comply with relevant laws and regulations. (*Id.* ¶27). The number of posts that must be covered by corrections officers varies from shift to shift, and it even varies from day to day with respect to a particular shift. (*Id.* ¶28). On any given day, additional posts may be required for a number of reasons, such as escorting an inmate to court or a medical appointment, guarding an inmate at the hospital, performing additional supervision for suicide prevention, providing specialized security details, providing heightened security

---

[1]     When citing a proposed fact within the parties' respective statements of undisputed facts, the Court has confirmed that the corresponding opposing statement (Dkt. No. 32 (the County's opposing statement); Dkt. No. 33-1 (plaintiffs' opposing statement)) either admits the fact or fails to specifically controvert it with evidence. *See* W.D.N.Y. L.R. Civ. P. 56(a).

details for high-risk inmates at court, escorting building contractors in secure areas of the jail, transferring inmates from jails in other jurisdictions to local courts, or meeting increased needs caused by increased inmate population. (*Id.*).

Plaintiffs and other corrections officers are represented by a labor union, the Niagara County Deputy Sheriff's Association (the "Union"). (*Id.* ¶2). As members of the Union, the terms and conditions of plaintiffs' employment are governed by a now-expired collective bargaining agreement between the County, the Sheriff, and the Union (the "CBA"). (*Id.* ¶3). The parties agree that the CBA has been extended by operation of law. (*Id.*). Pursuant to the CBA, full-time corrections officers receive various types of paid leave time that they can use throughout the year. (*Id.* ¶15). Leave time includes vacation days, "e-days," holidays, personal days, and sick leave, as well as leave for bereavement, disability, and military service. (*Id.*). In addition, for any time worked in excess of the regular and normally scheduled eight-hour work day or forty-hour work week, corrections officers are given the option of receiving either overtime pay at a rate of one and one-half times their regular pay rate or compensatory leave time at a rate of one and one-half hours for every excess hour worked. (*Id.* ¶21). It is the denial of plaintiffs' requests to use compensatory leave time that is at issue in this litigation.

In calculating overtime pay and compensatory leave time, the County includes all hours paid, not just hours worked. (*Id.* ¶22). For example, if, in a single work week, an officer works thirty-two hours and uses nine hours of sick leave, he is entitled to receive either overtime pay or compensatory time. Additionally, the CBA permits corrections officers to earn two hours of compensatory time for each hour spent at Corrections Emergency Response Team ("CERT") training. (*Id.* ¶23). "CERT training . . . consist[s]

of 4 (four) hours of training per calendar month," and is for "Corrections Officers who have successfully completed the Corrections Emergency Response Team Basic Academy." (*Id.*) (alterations in original).  Also under the CBA, corrections officers may accrue, or "bank," up to 100 hours of compensatory time. (*Id.* ¶24).  After the 100-hour maximum is reached, an officer is no longer given the choice of earning compensatory time in lieu of overtime pay. (*Id.*).  Corrections officers may also, but are not required to, "cash in" up to 80 hours of accrued compensatory time each calendar quarter. (*Id.* ¶25).

Corrections officers have the ability to schedule their contractual leave time in or about December of the prior year. (*Id.* ¶34).  The process of scheduling contractual leave was jointly developed by the County and the Union in order to help Union members use their leave time on the dates most desirable to them. (*Id.*).  In the first round of the scheduling process, Union members, in order of seniority, may schedule any number of their e-days and vacation days. (*Id.* ¶36).  Once all Union members have had the opportunity to schedule their e-days and vacation days, the process proceeds to the second round, where union members, again in order of seniority, are given the opportunity to schedule any number of their paid holidays and personal days. (*Id.*).  Thereafter, Union members may submit requests to use any remaining paid leave time, including compensatory time, throughout the year. (*Id.* ¶37).  To schedule compensatory time off, a corrections officer is expected to submit a request through "COSS," a computer scheduling system for Jail employees. (Dkt. No. 29-62 ¶27; Dkt. No. 31-1 ¶38).  The County maintains records of those requests, which generally show

when the request was made, the date requested off, and whether and when the request was approved or denied.  (Dkt. No. 31-1 ¶38).

According to Daniel Engert, the Deputy Chief Jail Administrator of the Niagara County Jail, the County has determined that in order to maintain minimum staffing levels, it cannot currently approve, in advance of a particular day shift, more than six corrections officers to take off the shift.  (Dkt. No. 31-6 ¶11).  Engert contends that the County developed this policy by taking into account the following factors:   (1) the minimum number of posts that must be covered pursuant to the Staffing Analysis prepared by the New York State Commission of Correction, (2) New York State regulations, including 9 NYCRR §7041.2, (3) the number of corrections officers, (4) best practices to effectively serve penological interests of the Jail, (5) any special needs that may arise, such as special assignments and posts, inmate transportation and supervision needs, disability leaves, bereavement leaves, military leaves, and call offs, and (6) the need to ensure that corrections officers have the ability to take the paid leave to which they are entitled under the CBA.  (*Id.* ¶12).

If a corrections officer submits an advance request to take off a day shift for which six officers are already scheduled to be off, the request is ordinarily denied.  (*Id.* ¶39).  The Chief or Deputy Chief may, however, exercise his or her discretion and grant the advance request, even if six officers are already scheduled to be off.  (Dkt. No. 29-9 at 24-25[2]).  Further, in many instances, more than six corrections officers actually end up taking off the day shift.  (Dkt. No. 32-3 ¶8).  This is generally the result of a corrections officer calling off shortly before the shift due to illness, bereavement, or other personal issues that arise at the last minute.  (*Id.*).  If an advance request to use

---

[2]     Page number citations for docket entries refer to the page number(s) assigned by CM/ECF.

leave time is denied because six corrections officers are already scheduled to be off, the requesting officer may verbally renew the request on the day he is seeking to take off.  (Dkt. No. 31-1 ¶42).  To renew a request, the officer must arrive at work in uniform and go through daily briefing.  (Dkt. No. 31-4 at 39).  If there are enough corrections officers to handle all necessary posts and minimum staffing needs, the sergeant on duty may then grant the renewed request.  (Dkt. No. 31-1 ¶42).  Renewed requests are awarded based on seniority, however.  (Dkt. No. 29-5 at 12).

When submitting a request for time off in the COSS scheduling system, a corrections officer has the ability to see which dates are "available" for advance approval, *i.e.*, dates for which six officers are not already scheduled to be off.  (Dkt. No. 31-1 ¶40).  If the officer selects an available date, then the leave request will likely be approved.  (*Id.*).  According to records from COSS, between May 2011 and November 2014, Werth had 39 requests to use compensatory time approved and three requests denied, Shawver had 21 requests approved and one request denied, Haner had 56 requests approved and 33 requests denied, and Newman had five requests approved and no requests denied.  (*Id.* ¶¶47, 50, 53, 57).  Plaintiffs argue that in addition to the compensatory time-off requests they submitted in COSS, they made verbal requests to use their compensatory time off, which the County denied.  (Dkt. No. 29-8 at 7-8; Dkt. No. 29-9 at 28).  Plaintiffs also point out that Sergeants Giles and Zalewski instructed officers not to bother requesting time off in COSS for unavailable dates, *i.e.*, dates for which six officers were already scheduled to be off.  (Dkt. No. 29-9 at 27-28 (Giles' testimony); Dkt. No. 29-11 at 13 (Zalewski's testimony)).  Thus, according to plaintiffs,

COSS does not accurately depict the exact number of times the County denied their requests to use their compensatory leave time.

On April 16, 2014, plaintiffs Newman and Werth commenced this action alleging that the County failed and refused to allow them to use their compensatory leave time in a timely manner, in violation of the FLSA, 29 U.S.C. §207(o).  (Dkt. No. 1).  Section 207(o) provides, in relevant part, that an employee who requests to use compensatory time off "shall be permitted by the employee's employer to use such time *within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency.*"  29 U.S.C. §207(o)(5) (emphasis added).

In June 2014, Newman and Werth filed an amended complaint adding four additional plaintiffs — Haner, Shawver, Richard Cirrito, and Robert Bucholtz.  (Dkt. No. 12).  Cirrito and Bucholtz later asked to be removed from this action, after which the four remaining plaintiffs filed their second amended complaint.  (Dkt. No. 24).[3]  After discovery concluded, plaintiffs and the County filed their respective motions for summary judgment on plaintiffs' FLSA claim.  (Dkt. Nos. 29, 31).

## DISCUSSION

Summary judgment is to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to

---

[3]   Although plaintiffs brought their complaint on behalf of a class of similarly situated Union members who allegedly had their requests to use compensatory time off unreasonably denied, plaintiffs never filed a motion to certify a collective action, and no other corrections officers joined the action.  (Dkt. No. 31-1 ¶¶9, 11, 13, 14).

the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).   Once the moving party has made a properly supported showing of the absence of any genuine issue as to all material facts, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*"   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks and citation omitted).   While the Court must construe the evidence in the light most favorable to the nonmoving party, *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011), to defeat summary judgment the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

"The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001).   Even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a court need not enter judgment for either party." *Id.* (citing *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993)).   "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.*

I. *Section 207(o)(5)*

The FLSA generally provides that hourly employees who work more than forty hours per week must be compensated for the excess hours at a rate not less than one-and-a-half times their regular hourly wage.  *Christensen v. Harris Cnty.*, 529 U.S. 576,

578-79 (2000) (citing 29 U.S.C. §207(a)(1)).  "Although this requirement did not initially apply to public-sector employers, Congress amended the FLSA to subject States and their political subdivisions to its constraints, at first on a limited basis, and then more broadly."  *Id.* at 579 (internal citations omitted).  In an effort "to mitigate the effects of applying the FLSA to States and their political subdivisions," Congress amended the statute to allow States and their political subdivisions to compensate employees for overtime by granting them compensatory time off at a rate of one and one-half hours for every hour worked.  *Id.* (citing 29 U.S.C. §207(o)(1)).  In order to provide compensatory time, "the employer must arrive at an agreement or understanding with employees that compensatory time will be granted instead of cash compensation."  *Id.* (citing 29 U.S.C. §207(o)(2)).  This requirement is met here because the governing CBA allows plaintiffs and other corrections officers to elect compensatory time in lieu of overtime pay.

At issue in this litigation is 29 U.S.C. §207(o)(5), which sets forth requirements concerning the approval of compensatory time-off requests.   As noted, under §207(o)(5), an employee who has accrued compensatory time and who has requested to use such time "shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency."  The Second Circuit has not yet interpreted §207(o)(5), and the parties' respective summary judgment motions offer competing interpretations of the statute.   Plaintiffs argue that the statute, although "somewhat ambiguous," allows an employee to use his compensatory time on the *specific date requested* unless the employer can show that granting the request will unduly disrupt its operations.  (Dkt. No. 29-63 at 5-6).  In support of their interpretation,

plaintiffs primarily rely on the Department of Labor's (the "DOL's") interpretation of the statute.  In particular, the relevant DOL regulation, 29 C.F.R. §553.25(d), provides, in relevant part, that "[w]hen an employer receives a request for compensatory time off, it shall be honored unless to do so would be 'unduly disruptive' to the agency's operations."  Plaintiffs' interpretation of the statute is supported by decisions by the Sixth Circuit, the Seventh Circuit, and district courts within the Seventh Circuit.  *Beck v. City of Cleveland*, 390 F.3d 912 (6th Cir. 2004); *Heitmann v. City of Chicago*, 560 F.3d 642, 646-47 (7th Cir. 2009); *DeBraska v. City of Milwaukee*, 131 F. Supp. 2d 1032, 1035 (E.D. Wis. 2000); *Heitmann v. City of Chicago*, No. 04 C 3304, 2007 WL 2739559, at *11 (N.D. Ill. Sept. 11, 2007).

The County offers a dramatically different interpretation of §207(o)(5).  It argues that an employer is not required to grant time off on the specific date requested by the employee, but, rather, must allow the employee to take off within a "reasonable period" after the request has been made.  The "unduly disrupt" clause creates an exception to this requirement, allowing an employer to avoid granting a leave request within a reasonable period of time if granting the request will cause an undue disruption to its operations.  According to the County, because the statute is unambiguous, the Court may not rely on the DOL's contrary interpretation of the statute.  The County's interpretation is supported by decisions by the Fifth Circuit, the Ninth Circuit, and the Southern District of New York.  *See Hous. Police Officers' Union v. City of Hous.*, 330 F.3d 298, 304 (5th Cir. 2003); *Mortensen v. Cnty. of Sacramento*, 368 F.3d 1082, 1084 (9th Cir. 2004); *Saunders v. City of N.Y.*, 594 F. Supp. 2d 346, 357 (S.D.N.Y. 2008); *Parker v. City of N.Y.*, No. 04 CV 4476(BSJ)(DCF), 2008 WL 2066443, at *7 (S.D.N.Y.

May 13, 2008); *Scott v. City of N.Y.*, 340 F. Supp. 2d 371, 380 (S.D.N.Y. 2004) ("*Scott I*"); *Scott v. City of N.Y.*, 592 F. Supp. 2d 386, 403 (S.D.N.Y. 2008) ("*Scott II*").

In the first case relied upon by the County, *Houston Police Officers' Union*, Houston's police department used a log book to list the police officers scheduled to be off duty on any given day.  330 F.3d at 300.  The log book contained a limited number of spaces for each day, corresponding to the shift commander's estimate of the unit's staffing requirements.  *Id.* at 300-01.  To use compensatory time, an officer had to sign his name in his unit's log book for the day he wished to take off, and if the relevant slot was not filled, the officer received his time off.  *Id.* at 301.  In affirming summary judgment for Houston and finding that the foregoing system of awarding compensatory time did not violate §207(o)(5), the Fifth Circuit held that the statute did not require Houston to grant an officer's time-off request for a specific date.  Rather, the statute simply required the city to allow an officer to use his compensatory time within a reasonable period after he submitted his request:

> The text of section 207(o)(5) plainly defines the period between the date the employee submits his request and the date the employer allows the employee to use the comp time:  the employee "shall be permitted . . . to use such [comp] time within a reasonable period after making the request."  29 U.S.C. §207(o)(5).  As the City suggests, *mandating a "reasonable period" for use of comp time is different from mandating the employee's chosen dates.  The language offers a span of time to the employer, the beginning of which is the date of the employee's request.*
>
> .   .   .
>
> Instead of obscuring the proper object of the "reasonable period" clause, the "unduly disrupt" clause serves to clarify its obvious meaning.  The "reasonable period" clause imposes upon the employer the obligation to facilitate the employee's timely usage of his accrued compensatory time.  The "unduly disrupt" clause suggests conditions, however,

> that would release the public employer from the previously
> imposed condition.  The statute, thus construed, reflects a
> balance between obligation and exemption.

*Id.* at 303 (emphasis added).

In *Mortensen*, the Ninth Circuit adopted the Fifth Circuit's interpretation of §207(o)(5).  There, a deputy county sheriff sued the County of Sacramento after it denied him permission to use his compensatory time on a specific date.  368 F.3d at 1085.  In affirming summary judgment for the county, the Ninth Circuit held that the statute did not compel the county to grant compensatory time off on the specific date requested by the plaintiff.  *Id.* at 1088-89.  Rather, the county had a reasonable period to allow the plaintiff to make use of his compensatory time:

> We conclude that the text of §207(o)(5) unambiguously
> states that once an employee requests the use of
> [compensatory time off], the employer has a reasonable
> period of time to allow the employee to use accrued time.
> Because the statutory language is unambiguous, we need
> not defer to the [DOL] regulations and opinion letter.

*Id.* at 1090.

In *Scott I*, the Southern District of New York followed the reasoning of the Fifth and Ninth Circuits and likewise held that §207(o)(5) does not require an employer to grant time off on the specific date requested by the employee.  The plaintiffs in *Scott I*, New York City police officers and detectives, alleged that the city's compensatory time system impermissibly required them to work for extended periods without the possibility of using their compensatory time.  340 F. Supp. 2d at 374.  The city moved to dismiss the plaintiffs' claim, arguing that "an employer is only obligated to permit the employee to use her compensatory time within a reasonable time span prior to or following the asked-for date(s)."  *Id.* at 378.  Finding the reasoning in *Houston* and *Mortensen* to be

persuasive, the court held that "the 'reasonable period' referenced in §207(o)(5) refers to the time period *between the date for which the employee applies for leave and the date on which that leave is actually granted.*"  *Id.* at 380 (emphasis added).  The court did, however, deny the city's motion to dismiss the plaintiffs' complaint, as the plaintiffs adequately alleged that the city did not allow them to use their compensatory time within a reasonable period of time.  *Id.* at 380-81.  Other decisions from the Southern District of New York have followed *Scott I's* interpretation of §207(o)(5).  *See Saunders*, 594 F. Supp. 2d at 357; *Parker*, 2008 WL 2066443, at *7.

The Court finds the reasoning of the Fifth Circuit, the Ninth Circuit, and the Southern District of New York to be more persuasive than the case law relied upon by plaintiffs.  Section 207(o)(5) does not, as plaintiffs contend, require an employer to grant time off on the specific date requested by the employee absent an undue disruption to the employer's operations.  Rather, as explained by the Southern District of New York in *Scott I*, §207(o)(5) is to be interpreted as follows:

> [T]he "reasonable period" referenced in section 207(o)(5) refers to the time period between the date for which the employee applies for leave and the date on which that leave is actually granted.  Section 207(o) contains a clear expression of congressional intent as to the disputed issue — the meaning of "reasonable period."  . . .  For instance, the phrase "unduly disrupts" is not subsumed by the words "reasonable period," but provides an exception to the employer's statutory obligation to accommodate the employee's request within a "reasonable period."

340 F. Supp. 2d at 380.  The foregoing interpretation "gives effect to all of the provisions of the statute," in particular, the "reasonable period" and "unduly disrupt" clauses.  *Id*.  It is also consistent with *Christensen*, in which the Supreme Court held that an employer may, at its option, unilaterally compel an employee to use compensatory time on a

particular date.   529 U.S. at 585.   Because §207(o)(5) is unambiguous, the Court will not defer to the DOL regulation and materials on which plaintiffs primarily rely to support their interpretation of the statute.   *See Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."); *see also Scott I*, 340 F. Supp. 2d at 380; *Hous. Police Officers' Union*, 330 F.3d at 304; *Mortensen*, 368 F.3d at 1084.   Nor will the Court rely upon the legislative history proffered by plaintiffs.   *See Puello v. Bureau of Citizenship & Immigration Servs.,* 511 F.3d 324, 331 (2d Cir. 2007) ("Because we believe the language in the statute is unambiguous, we need not examine legislative history to divine the statute's meaning.").

Although the Court adopts the County's interpretation of §207(o)(5), doing so does not automatically entitle either party to summary judgment.   Rather, the question becomes whether the County allowed plaintiffs to make use of their compensatory leave time within a reasonable period of time or, if not, whether its failure to do so was based on the need to avoid an undue disruption.   Because issues of fact exist as to these two elements, it is recommended that the parties' competing summary judgment motions be denied.

A. *Reasonable Period*

Section 207(o)(5) does not define "reasonable period."   Thus, to discern the meaning of this term, the Court will look to the applicable DOL regulation, 29 C.F.R. §553.25(c).   *See Mortensen*, 368 F.3d at 1090 (consulting regulation to determine

meaning of "reasonable period"); *Scott I*, 340 F. Supp. 2d at 380 n.52 (same).[4]   Section 553.25(c) provides that unless the "reasonable period" for the use of compensatory leave time is set forth in the parties' collective bargaining agreement, several factors are to be considered to determine what is a reasonable period for the use of such time:

> Whether a request to use compensatory time has been granted within a "reasonable period" will be determined by considering the customary work practices within the agency based on the facts and circumstances in each case.  Such practices include, but are not limited to (a) the normal schedule of work, (b) anticipated peak workloads based on past experience, (c) emergency requirements for staff and services, and (d) the availability of qualified substitute staff.

The CBA at issue in this case requires an officer to submit a compensatory leave request at least 48 hours in advance of the shift he wishes to take off.  (Dkt. No. 31-5 at 25).  The CBA does not, however, define what is a "reasonable period" for the use of compensatory time.[5]   Thus, because the parties did not define "reasonable period" in their CBA, the factors set forth in the DOL regulation are controlling.  No analysis of the applicable factors is provided for in the parties' papers, however.  Presumably, plaintiffs believe that anything more than a day or two is unreasonable, while the County believes that a reasonable period means a week, or perhaps even a month.  Absent any analysis of the controlling factors, the Court cannot determine what constitutes a reasonable period for allowing an employee to use his compensatory leave time.

---

[4]       As noted by the County, while the "framework" of §207(o)(5) is unambiguous and the DOL regulation may not be consulted on this point, the regulation's definitions of "reasonable period" and "unduly disrupt" may be consulted because the statute does not define either term.  (*See* Dkt. No. 32-5 at 16).

[5]       In *Mortensen*, the CBA set forth a one-year period for the employer to either grant or cash out compensatory leave time, which the Ninth Circuit construed to be an agreed-upon "reasonable period." 368 F.3d at 1090-91.  To compare, here, although the CBA *allows* officers to cash out compensatory time on a quarterly basis, it does not *require* them to do so.  Thus, this portion of *Mortensen* is inapposite.

Even if the Court could determine what constitutes a "reasonable period," there are disputed issues of fact as to whether plaintiffs could make use of their compensatory leave time within a reasonable period of the dates they requested, but were denied permission, to take off.  Plaintiffs argue that they had to wait a considerable period of time because very few dates were available for selection in COSS.  For example, in a September 24, 2010 e-mail from Sergeant Stan Surman to plaintiffs Haner, Shawver, and other corrections officers, Sergeant Surman states that only twelve days remain available for time off usage.  (Dkt. No. 29-14 at 2).   Similarly, Sergeant Giles testified that by the end of December, most of the dates for the following year already have six officers scheduled to be off and are therefore unavailable for advance approval.  (Dkt. No. 29-9 at 22).  Sergeants Giles and Zalewski even instructed corrections officers not to bother requesting off on days for which six officers were already scheduled to be off.  (*Id.* at 28 (Sergeant Giles:  "They [corrections officers] might initiate the discussion and say, hey, how does it look for such and such a day and I'll say it's booked up, don't bother putting the day in."); Dkt. No. 29-11 at 13 (similar testimony by Sergeant Zalewski)).[6]  The paucity of available dates calls into question whether plaintiffs could make use of their compensatory leave time within a reasonable period of the dates requested.

The County argues, however, that it allowed plaintiffs to use their compensatory time within a reasonable period because, over the course of three years, plaintiffs were approved to use compensatory time on 101 different days.  Contrary to the County's

---

[6]     Plaintiffs also contend that the County did not grant their compensatory leave requests within a reasonable period of time because, when it denied a request for a particular date, it did not provide an alternative date.  This argument fails because plaintiffs could view and select alternative dates in COSS. The relevant question here is whether these alternative dates are reasonably proximate to the dates plaintiffs requested, but were denied permission, to take off.

argument, simply because plaintiffs were able to take off a multitude of days does not mean that they were able to take off within a reasonable period of the dates they requested.  *See Parker*, 2008 WL 2066443, at *8 ("Defendants argue that because the time and leave data show that on average [the] Plaintiffs take compensatory time off approximately every thirty days, the City must be granting their requests to use compensatory time within a reasonable period.  *However, evidence of frequent usage does not necessarily indicate that the compensatory time system is in compliance with Section 207(o)(5).*") (emphasis added).   For plaintiffs to have been able to use their compensatory time within a reasonable period, the County must show that the "dates of actual approval" were within a reasonable period of time of the "requested usage dates." *Id.*  Put another way, the question is whether the County permitted plaintiffs "to use [their] compensatory time within a reasonable time span prior to or following the asked-for date(s)."  *Scott I*, 340 F. Supp. 2d at 377-78.

The County has not shown that when it denied plaintiffs' time-off requests, it allowed plaintiffs to take off on dates within a "reasonable time span prior to or following the asked-for-date(s)."  *Id.; see also Parker*, 2008 WL 2066443, at *8 (finding disputed issues of fact as to the reasonable period requirement because "[t]he time and leave data here reveals nothing about Plaintiffs' requested usage dates or the dates on which these requests are actually granted").   Specifically, although the County contends that "there were numerous available dates from which Plaintiffs could choose to submit a request to use compensatory time" (Dkt. No. 35 at 9), it has not set forth the *specific dates* that were available for selection, nor has it explained whether these dates are reasonably proximate to the dates plaintiffs requested, but were denied permission, to

take off.   The various reports that the parties submitted to the Court (View Activity Reports, Balance of Time Off Reports, and Time Off Activity Reports) do not contain all of the information necessary to perform the governing analysis.   While the reports show when the request was made, the date requested off, and whether and when the request was approved or denied, the reports do not show other dates available for selection and their temporal relationship to the dates requested by plaintiffs.   Thus, questions of fact exist as to whether plaintiffs could use their compensatory leave time within a reasonable period of the asked-for dates.

The County also argues, however, that plaintiffs were able to use their compensatory leave time within a reasonable period because, even when it denied plaintiffs' time-off requests, plaintiffs could have renewed the requests on the day of the shift.   This argument does not entitle the County to summary judgment because the record is silent as to how many renewed requests are granted and how many are denied.   The County's argument that plaintiffs could have simply cashed out their compensatory leave time if they were unsatisfied with the dates available for selection is likewise without merit.   Once plaintiffs requested to use their compensatory time, the County had to comply with the requirements set forth in §207(o)(5).   *See Christensen*, 529 U.S. at 583.   The County cannot avoid these requirements simply because plaintiffs had the option to cash out their compensatory leave time.

Thus, for these reasons, there are disputed issues of fact as to what constitutes a reasonable period of time and whether plaintiffs were able to use their compensatory leave time within a reasonable period of the asked-for dates.   The Court should not rule as a matter of law for either plaintiffs or the County on this point.

B. _Undue Disruption_

Even if an employer fails to grant a time-off request within a reasonable period of time, it may escape liability by showing that granting the request would have unduly disrupted its operations.  _Parker_, 2008 WL 2066443, at *8; _Scott II_, 592 F. Supp. 2d at 404 ("The undue disruption provision serves as a safety valve within the compensatory time mechanism, protecting public agencies' operational capacity from being harmed by the absence of vital employees.").  Like the term "reasonable period," §207(o)(5) does not define "unduly disrupt."  Thus, to discern the meaning of this term, the Court will look to the relevant DOL regulation, 29 C.F.R. §553.25(d).  Section 553.25(d) provides, in relevant part:

> Mere inconvenience to the employer is an insufficient basis for denial of a request for compensatory time off.  For an agency to turn down a request from an employee for compensatory time off requires that it should reasonably and in good faith anticipate that it would impose an unreasonable burden on the agency's ability to provide services of acceptable quality and quantity for the public during the time requested without the use of the employee's services.

(internal citation omitted).

A financial burden, alone, does not unreasonably burden an employer's ability to provide services of acceptable quality and quantity for the public.  _Scott II_, 592 F. Supp. 2d at 404 ("'A financial burden . . . does not on its own[ ] rise to the level of an undue disruption,' as this would undermine the FLSA policy of creating a financial disincentive to overwork individual employees.") (alterations in original) (quoting _Parker_, 2008 WL 2066443, at *7).  Requiring one employee to work overtime so that another employee may use his compensatory leave time may or may not be an undue disruption — again,

the answer turns on whether overtime unreasonably burdens the employer's ability to provide services of acceptable quality and quantity.  *Id.*[7]

Here, plaintiffs argue that the County limits advance approval to only six officers for financial reasons — namely, to avoid paying overtime.  Sergeant Zalewski, who works the day shift, testified that the Jail maintains a "verbal" policy prohibiting one corrections officer from working overtime to cover another officer's compensatory leave request.  The Jail's "chain of command" communicated this policy to Zalewski.  The County offers conflicting evidence on this point, arguing that officers routinely work overtime even when other officers are out on compensatory leave.  (Dkt. No. 32-3 ¶13; *see also* Dkt. No. 31-8 ¶7 (providing the total number of hours for which corrections officers received overtime pay between 2012 and 2014:  13,418.75 hours in 2012, 12,352.83 hours in 2013, and 12,686.50 hours in 2014)).  The County further argues that it denied plaintiffs' compensatory leave time requests not for financial reasons, but to avoid an undue disruption to its staffing levels.  According to Daniel Engert, the Deputy Chief Jail Administrator of the Niagara County Jail, the County has determined that in order to maintain the minimum staffing level for the day shift, it cannot currently approve, in advance of the shift, more than six corrections officers to take off.  Engert contends that the County developed this policy by taking into account the following factors:  (1) the minimum number of posts that must be covered pursuant to the Staffing

---

[7]     The County's reliance on *Parker* and *Mortensen* for the supposed principal that the FLSA never requires an employer to grant compensatory time when doing so will require the payment of overtime to another employee is misplaced.  In *Parker*, there was no evidence that the employer would be able to grant compensatory time-off requests even if other employees were required to work overtime.  2008 WL 2066443, at *9.  To compare, here, the County readily admits that corrections officers routinely work overtime to cover for other employees who are out on leave.  In *Mortensen*, the Ninth Circuit concluded that paying one employee overtime so that another employee could use his compensatory time is not required under the statute.  368 F.3d at 1090.  The Court declines to follow this language because it is contrary to the principle that a financial burden, alone, is not an undue disruption.  *See Scott II*, 592 F. Supp. 2d at 404.

Analysis prepared by the New York State Commission of Correction, (2) New York State regulations, including 9 NYCRR §7041.2, (3) the number of corrections officers, (4) best practices to effectively serve penological interests of the Jail, (5) any special needs that may arise, such as special assignments and posts, inmate transportation and supervision needs, disability leaves, bereavement leaves, military leaves, and call offs, and (6) the need to ensure that corrections officers have the ability to take the paid leave to which they are entitled under the CBA.

In response to the County's staffing argument, plaintiffs argue that the County has no legitimate basis for deciding months ahead of time that only six officers may receive advance approval to take off a particular day shift.   Plaintiffs' position is supported by three pieces of evidence:  (1) the County's admission that "[t]he number of posts that must be covered by corrections officers varies from shift to shift, and it even varies from day to day with respect to a particular shift," (2) that in some instances, the County allows more than six officers to receive advance approval to take off the day shift, and (3) the fact that corrections officers may verbally "renew" a request for time off on the day of the shift.   If, as plaintiffs point out, the number of posts to be covered "varies from shift to shift," and the County routinely has more than six officers take off the day shift, then the County's policy of permitting only six officers to receive advance approval to take off the day shift may be unnecessary to avoid an undue disruption. The Court also notes that the Staffing Analysis relied upon by the County is silent as to the number of officers who may receive advance approval to take off the day shift.  (Dkt. No. 31-7 at 2-5).

Accordingly, whether the County's policy of denying time-off requests when six officers are already scheduled to take off the day shift is indeed necessary to avoid an undue disruption, and whether or not the County would be unduly burdened by having one officer work overtime so that another officer can use his compensatory leave time, present disputed issues of fact that cannot be resolved on summary judgment.  In two cases involving similar sets of facts, the Southern District of New York denied summary judgment on the plaintiffs' respective §207(o)(5) claims.  It is recommended that this Court do the same.  Due to several disputed issues of fact as to the "reasonable period" and "unduly disrupt" elements of §207(o)(5), the trier of fact, not the Court, should determine whether the County impermissibly denied plaintiffs' time-off requests.  *See Scott II*, 592 F. Supp. 2d at 406-07 ("Without undisputed proof that supervisors never deny compensatory time requests for impermissible reasons, defendants are not entitled to summary judgment on plaintiffs' denial of use claim.  Therefore, the factual question of whether and how often NYPD denials of compensatory time requests beyond the reasonable period threshold violate the 'undue disruption' limitation must be resolved at trial."); *Saunders*, 594 F. Supp. 2d at 363 ("Assessing defendants' and plaintiffs' competing views on whether compensatory time was used in a reasonable time after it was requested or whether it was justifiably denied for reasons of undue disruption requires credibility determinations that are the province of the jury.  As such, there are issues of fact and defendants' request for summary judgment is denied.").

II.      *The County's Other Arguments*

The County asserts three other arguments in support of its summary judgment motion.  First, it argues that plaintiff Newman should be dismissed from this action

because all of the compensatory time-off requests he submitted in the COSS system were approved.   The County's argument ignores that Jail Sergeants specifically instructed corrections officers not to request leave time in COSS if six officers were already scheduled to be off.   Construing the evidence in the light most favorable to plaintiffs, the sergeants' instructions may be construed as an implicit denial of Newman's requests to take off a particular date or dates.  It would have been futile — and, potentially, an act of insubordination — for Newman to have requested time off in COSS in light of these instructions.

Next, the County theorizes that §207(o)(5) does not apply where an employee accumulated compensatory leave time even though he did not actually "work" forty hours in a week.   This situation may arise if the employee exceeded the forty-hour threshold by taking leave time (*e.g.*, working 35 hours and taking six hours of sick leave) or if he earned compensatory time by attending CERT training.   The County's argument that §207(o)(5) does not apply under such circumstances is without merit because it is contrary to its own practice of allowing corrections officers to request compensatory time off regardless of how they earned their compensatory leave time.   Now that the County has acted upon and denied plaintiffs' compensatory time-off requests, it cannot turn around and argue that §207(o)(5) does not apply unless plaintiffs actually "worked" more than forty hours in a week.   Even assuming, however, that §207(o)(5) applies only if plaintiffs earned compensatory time by actually "working" more than forty hours, the County would not be entitled to summary judgment on this point because it has not set forth how many hours each plaintiff worked and how each plaintiff accumulated every

hour of his or her compensatory time.[8]   Drawing all reasonable inferences in favor of plaintiffs on this issue, it is possible that plaintiffs earned at least some of their compensatory leave time during weeks in which they did in fact work more than forty hours.  Thus, this branch of the County's motion should be rejected.

Lastly, the County argues the complaint should be dismissed because it requests declaratory relief, which the County argues is not available under the FLSA.  However, as the County acknowledges, plaintiffs seek other relief as well, including damages. Because it is recommended that both motions for summary judgment be denied, a ruling on the relief available to plaintiffs is premature at this time.  The appropriate relief, if any, should be decided at trial.

<u>**CONCLUSION**</u>

For the foregoing reasons, it is recommended that plaintiffs' (Dkt. No. 29) and the County's (Dkt. No. 31) respective motions for summary judgment be denied.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72.  Any requests for an extension of this deadline must be made to Judge Skretny.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation***

---

[8]   The Court notes that Plaintiff Shawver earned some, but not all, of his compensatory leave time by attending CERT training.  (Dkt. No. 31-8 ¶19).

**WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law, and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

SO ORDERED.

Dated:      June 1, 2016
            Buffalo, New York

/s/ Michael J. Roemer
MICHAEL J. ROEMER
United States Magistrate Judge