**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**JEFFREY NEWMAN, RICHARD WERTH,**
**JEFFREY SHAWVER, AND TRACI**
**HANER,**

                    **Plaintiffs,**

      **-vs-**

**COUNTY OF NIAGARA,**

                  **Defendant.**

**Index No. 1:14-cv-00278**

---

# DEFENDANT COUNTY OF NIAGARA'S
# TRIAL BRIEF

---

**BOND SCHOENECK & KING**
*Attorneys for Defendant*
 *County of Niagara*
The Avant Building – Suite 900
200 Delaware Avenue
Buffalo, New York  14202-2292
Telephone: (716) 416-7024

*Of Counsel:*

    Melinda G. Disare, Esq.
    Michael E. Hickey, Esq.

1283373.1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 3

DISCUSSION ....................................................................................................................... 15

I.      Plaintiffs Cannot Prevail on Their FLSA Claim Because the County Complied
        With the Statute's Fundamental Requirements .................................................... 15

II.     Plaintiffs Cannot Prevail on Their Claim Alleging a Violation of Section
        207(o)(5) of the FLSA ........................................................................................ 16

        A.      Legal Standard and Burdens of Proof Applicable to Plaintiffs' Section
                207(o)(5) Claim ...................................................................................... 17

        B.      The Reasonable Period Applicable to This Case ..................................... 19

        C.      Plaintiffs Cannot Meet Their Burden of Proving That the County
                Routinely Failed to Permit Them to Use Compensatory Time Within a
                Reasonable Period of the Date They Requested to Use It ....................... 20

        D.      Even If Plaintiffs Could Meet Their Burden, Plaintiffs Cannot Prevail on
                Their Claim Because the County Can Establish That It Denied
                Compensatory Time Requests to Avoid Undue Disruption to Its
                Operations ............................................................................................... 23

III.    Plaintiffs Cannot Prevail to the Extent Their Claims Are Based on Compensatory
        Time Accumulated for Non-Statutory Overtime Hours ....................................... 27

IV      Plaintiff Newman Cannot Prevail in this Action Because He Never Had a
        Compensatory Time Request Denied During the Relevant Time Period .............. 29

V       Plaintiffs' Potential Recovery in this Action is Limited ...................................... 30

        A       The Relief Sought By Plaintiffs Is Not Available under the FLSA .......... 30

        B.      The Monetary Relief for Plaintiffs' Claims is Limited and Already
                Available to Them .................................................................................... 32

        C.      Plaintiffs Are Not Entitled to Liquidated Damages Because The Evidence
                Shows that the County Had and Has a Good Faith Belief That It Complies
                with Section 207(o)(5)'s requirements ..................................................... 34

VI.     Evidentiary Issues ................................................................................................ 35

A.   Plaintiffs Must Be Barred From Introducing Evidence From Outside the Relevant Time Period ............................................................................... 35

1.   The Relevant Time Period for Plaintiffs' Claims is April 12, 2012 or June 24, 2012 through the Present .................................... 35

2.   Evidence from Outside the Relevant Time Period Must Be Excluded ...................................................................................... 36

B.   Plaintiffs Must Be Barred From Introducing Testimony Regarding "Hypothetical" Compensatory Time Requests ......................................... 37

CONCLUSION .................................................................................................... 38

1283373.1

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Christensen v. Harris County,*
529 U.S. 576, 583-84 (2000) ........................................ 16

*Cole v. City of Port Arthur,*
2014 U.S. Dist. LEXIS 96754, *27 (E.D. Tx. July 16, 2014) ........................................ 23

*Heitmann v. City of Chi.,*
560 F.3d 642 (7th Cir. Ill. 2009) ........................................ 30, 31, 32

*Herman v. RSR Sec. Servs.,*
172 F.3d 132, 141 (2d Cir. 1999) ........................................ 35

*Houston Police Officers' Union v. City of Houston,*
330 F.3d 298, 306-07 (5th Cir. Tex. 2003) ........................................ 23

*Letouzel v. Eastman Kodak Co.,*
2006 U.S. Dist. LEXIS 33453, *13 (W.D.N.Y. May 25, 2006) ........................................ 30

*Lupien v. City of Marlborough,*
387 F.3d 83, 87 (1st Cir. 2004) ........................................ 32

*McLaughlin v. Richland Shoe Co.,*
486 U.S. 128, 133 (1988) ........................................ 35

*Mortensen v. Cty. of Sacramento,*
368 F.3d 1082 (9th Cir. 2004) ........................................ 19, 25

*N.Y. State Court Clerks Ass'n v. Unified Court Sys. of N.Y.,*
25 F. Supp. 3d 459, 466 (S.D.N.Y. 2014) ........................................ 30

*Parada v. Banco Indus. De Venezuela, C.A.,*
753 F.3d 62, 71 (2d Cir. 2014) ........................................ 35

*Parker v. City of New York,*
2008 U.S. Dist. LEXIS 38769 (S.D.N.Y. May 13, 2008) ........................................ passim

*Scott v. City of New York,*
340 F. Supp. 2d 371, 380 (S.D.N.Y. 2004) ........................................ 18, 20, 25

**Statutes**

29 U.S.C. § 207(a) ........................................ 15

29 U.S.C. § 216(b) ........................................ 32

29 U.S.C. § 216(c) ........................................ 34

29 U.S.C. § 255(a) ........................................ 35

29 U.S.C. § 260 ........................................ 34

29 U.S.C. §§ 206(a) ........................................ 15

29 U.S.C. 207(o)(1) ........................................ 15

29 U.S.C. 207(o)(2) ........................................ 15

29 U.S.C. 207(o)(5) ........................................ passim

1283373.1

**Rules**

29 CFR 553.28(a)..................................................................................................................... 29

29 CFR 553.28(e)..................................................................................................................... 29

9 NYCRR § 7041.2............................................................................................................. 7, 24

1283373.1

## PRELIMINARY STATEMENT

In their Amended Complaint, Plaintiffs Jeffrey Newman, Richard Werth, Jeffrey Shawver, and Traci Haner (who are all Corrections Officers at the Niagara County Jail) allege that the County of Niagara ("County") violated Section 207(o)(5) of the Fair Labor Standards Act ("FLSA") by unreasonably delaying their ability to use compensatory time. To prevail at trial, Plaintiffs have the burden of proving, by a preponderance of the evidence, that they "requested the use of…compensatory time" and that the County did not permit them to use such compensatory time "within a reasonable period" before or after the date they requested to use it. *See* 29 U.S.C. 207(o)(5). Plaintiffs will not be able to meet that burden.

The admissible evidence shows that the County complied with the FLSA's fundamental requirements that are focused on providing employees with minimum wage for all hours worked and overtime pay for hours worked over 40 in a workweek. The compensation required by the FLSA is readily available to Plaintiffs. They can receive overtime pay immediately after working overtime hours and, even if they choose to accept compensatory time instead, they can receive cash for any accrued but unused compensatory time on a quarterly basis, at their option.

The admissible evidence also shows that, when Plaintiffs were denied the use of compensatory time on a particular date, Plaintiffs could have easily picked a different day, within a reasonable period of time, to use their compensatory time. Under those circumstances, there is no basis to find a violation of Section 207(o)(5)'s requirements.

Plaintiffs' requests to use compensatory time (as well as the requests of other Corrections Officers) are all well-documented in County records. Those records show that Plaintiffs were able to – and, in many cases, did – use their compensatory time within a "reasonable period." Significantly, the County's records are the only admissible evidence of Plaintiffs' compensatory time requests and the dates available for compensatory time usage. The records provide no

support for Plaintiffs' claims. In the absence of any admissible evidence to support their claims, Plaintiffs will be unable to prevail at trial.

Significantly, even if Plaintiffs could prove that they were not able to use their compensatory time within a reasonable period, the County would still be in compliance with Section 207(o)(5) because, when it denied Plaintiffs' compensatory time requests, it did so to avoid undue disruption to Jail operations. This "undue disruption" exception is clearly set forth in the statute and completely absolves the County of liability. Under the exception, if granting a compensatory time request would unduly disrupt the employer's operations, then it can deny the request and there is no statutory violation regardless of whether the use of compensatory time was permitted within a reasonable period.

The facts of this case are largely undisputed. Based on those facts, the County filed a motion for summary judgment and explained how the records (and other evidence) demonstrated its compliance with Section 207(o)(5)'s requirements. Plaintiffs also filed for summary judgment, relying on an erroneous interpretation of Section 207(o)(5) in claiming that the County was in violation of the law.

The summary judgment motions were heard by Magistrate Judge Roemer. Although Magistrate Roemer agreed with the County's interpretation of the law, he declined to grant summary judgment to either party. In doing so, Magistrate Roemer placed a heavy burden on the County to demonstrate the non-existence of elements of Plaintiffs' claims, effectively shifting the burden of proof to the County. Regardless of whether shifting the burden to the County was appropriate at summary judgment, it is certainly inappropriate at trial.

Plaintiffs have the burden of proof in this action. They will not be able to meet that burden and, as a result, they will be unable to prevail at trial.

2

## FACTUAL BACKGROUND

Plaintiffs are all Corrections Officers at the Niagara County Jail. They are jointly employed by the County and the Sheriff of the County of Niagara ("Sheriff"), and they are represented by a labor union – the Niagara County Deputy Sheriff's Association ("Union"). (Engert Decl. ¶ 2; Newman Tr. 6:13-14; Werth Tr. 7:5-20, 8:10-15; Shawver Tr. 4:13-23, 5:1; Haner Tr. 6:18-21, 11:5-8.)[1] Plaintiff Newman is the President of the Union. (Newman Tr. 7:8-23, 8:1-2.) Plaintiff Haner is Plaintiff Newman's spouse. (Newman Tr. 23:13-16; Haner Tr. 12:13.) As members of the Union, the terms and conditions of Plaintiffs' employment are governed by a collective bargaining agreement ("CBA") between the County, the Sheriff and the Union. (Hickey Decl., Exh. F.)

The County currently employs 112 full-time Corrections Officers at the Jail. Corrections Officers are assigned to work one of three different shifts: the day shift (7:45 a.m. to 3:45 p.m.), the afternoon shift (3:45 p.m. to 11:45 p.m.), and the midnight shift (11:45 p.m. to 7:45 a.m.). (Hickey Decl., Exh. F, p. 21.) All four Plaintiffs are assigned to the day shift. (Engert Decl. ¶ 4.)

**Procedural History**

Plaintiffs Newman and Werth filed the original complaint in this matter on April 16, 2014, alleging violations of Section 207(o)(5) of the FLSA. (*See* Dkt. #1.) On June 3, 2014, the County moved to dismiss the original complaint on several grounds, including failure to state a

---

[1] "Hickey Decl." refers to Dkt. No. 31-3, the February 16, 2016 Declaration of Michael E. Hickey, Esq.; "Newman Tr." refers to the deposition testimony of Jeffrey Newman attached as Exhibit A to the Hickey Declaration; "Werth Tr." refers to the deposition testimony of Richard Werth attached as Exhibit B to the Hickey Declaration; "Shawver Tr." refers to the deposition testimony of Jeffrey Shawver attached as Exhibit C to the Hickey Declaration; "Haner Tr." refers to the deposition testimony of Traci Haner attached as Exhibit D to the Hickey Declaration; "Engert Decl." refers to Dkt. No. 31-6, the February 11, 2016 Declaration of Daniel Engert; "Engert Resp. Decl." refers to Dkt. No. 32-3,  "Hall Decl." refers to Dkt. No. 31-8, the February 16, 2016 Declaration of Margo Hall.

claim. (*See* Dkt. #8.) On June 24, 2014, in lieu of responding to the County's motion, Plaintiffs seemingly acknowledged the insufficiency of their allegations and filed an Amended Complaint. (*See* Dkt. #12, ("Am. Compl.").) The Amended Complaint contains slightly more detailed allegations and, with the Amended Complaint, four additional named Plaintiffs were added to the action – Traci Haner, Richard Cirrito, Robert Buchholz, and Jeffrey Shawver. (*See id.*)

This action was purportedly brought as a collective action by the named Plaintiffs on behalf of themselves and similarly-situated Union members who have allegedly had requests to use compensatory time denied in violation of the FLSA. (*See* Am. Compl. ¶ 3.) The Amended Complaint, filed on June 24, 2014, generally alleges that, "over at least the last three years," the County has "failed and refused to grant Plaintiffs, and those in the [Union who were] similarly situated, the opportunity to take 'comp time' off in a timely manner."[2] (*Id.* ¶ 13.)

Although Union members were informed of the lawsuit and their ability to join it during Union meetings (*see* Newman Tr. 24:16-23, 25:1-1-12; Werth Tr. 12:14-23, 13:1-9), the November 13, 2014 "opt-in" deadline set by the Court (Dkt. #17) passed without any additional individuals joining the litigation. However, less than a year after the Amended Complaint was filed, two of the named Plaintiffs asked to be removed from the action. Indeed, as reflected on the Court's docket, Plaintiffs Bucholtz and Cirrito were terminated from this action on June 4, 2015. This leaves only 4 out of the 112 Corrections Officers as Plaintiffs in this litigation. No additional individuals have opted in to the action, and it is now too late to do so.

---

[2] The three-year time period set forth in the Amended Complaint corresponds with the statute of limitations for a claim that an employer "willfully" violated the FLSA. Indeed, FLSA claims are subject to a two-year statute of limitations, which only increases to three years if the employer's actions are found to be willful. 29 U.S.C. § 255(a). Here, as discussed in Section VI(A)(1), even if Plaintiffs could establish an FLSA violation (which they cannot), they cannot prove that the County willfully violated the law. As such, the relevant time period for Plaintiffs claims runs from April 16, 2012 (for Plaintiffs Newman and Werth) or June 24, 2012 (for Plaintiffs Haner and Shawver) to the present ("the relevant time period").

1283373.1

**Time Off Provided by the CBA**

Pursuant to the CBA, full-time Corrections Officers are provided with various types of paid time off from work that can be used throughout the year. This paid time off includes vacation days, holidays, personal days, sick leave, and "e-days" (which are extra paid days off from work). (Newman Tr. 10:3-9; Engert Decl. ¶ 5.) Corrections Officers are also entitled to take paid leave for a number of other reasons, including bereavement, disability, and military service. (Hickey Exh. F, pp. 14-20.)

Each year, Corrections Officers receive 10 "e-days," 14 paid holidays, 3 personal days and, depending on their years of service, between 10 and 20 vacation days. They earn sick leave at a rate of one working day (8 hours) for each month of work. It can be accumulated up to a maximum of 210 days. Sick leave is to be used for personal illness, medical visits, or illness in the employee's immediate family. Corrections Officers are expected to notify their supervisor that they are using sick leave one hour before their shift. (Hickey Decl., Exh. F, pp. 12-13, 21-25.)

**Overtime and Comp Time**

Pursuant to the CBA, for any time over their "regular and normally scheduled" 8-hour work day or 40-hour workweek, Corrections Officers can choose to receive: (a) overtime pay at a rate of one and one-half times their regular rate of pay, or (b) compensatory time at a rate of one and one-half times the applicable hours. (*See* Hickey Decl., Exh. F, p. 29.) Corrections Officers receive this overtime pay or compensatory time regardless of whether they have actually worked 40 hours in a workweek. (Engert Decl. ¶ 6; Hall Decl. ¶ 4; Haner Tr. 42:4-23, 43:1-6; Hickey Decl., Exh. F, p. 28.) The County includes all hours paid (not just hours worked) in its calculation for purposes of awarding overtime pay or compensatory time. (Hall Decl. ¶ 5; Haner

5

Tr. 42:4-23, 43:1-6.) Paid time off from work (which includes vacation, holidays, e-days, personal days, sick days, bereavement leave, military leave, compensatory time, and daily paid 30-minute meal breaks) accounts for some of the hours paid to a Corrections Officer in a week. (Hall Decl. ¶ 6.) As such, a Corrections Officer may work fewer than 40 hours in a week but still receive overtime pay or compensatory time. (*Id.*) In fact, since Corrections Officers receive a daily paid meal break, at least a portion of the overtime pay or compensatory time awarded in a given week is not related to actual hours worked over 40. (*Id.*)

Compensatory time is not only earned in lieu of overtime pay. The CBA also provides that Corrections Officers have the option of earning two hours of compensatory time for each hour spent at Corrections Emergency Response Team (CERT) training. (Hickey Decl., Exh. F, p. 28; *see* Shawver Tr. 6:1-23, 7:1-18). As stated in the CBA, "CERT training…consist[s] of 4 (four) hours of training per calendar month" and it is for "Corrections Officers who have successfully completed the Corrections Emergency Response Team Basic Academy…." (Hickey Decl., Exh. F, p. 28.) A Corrections Officer earns compensatory time for CERT training regardless of the number of hours he works during the week the training is held. (Hall Decl. ¶ 8; Shawver Tr. 7:12-16; Newman Tr. 17:9-11.)

The CBA provides that Corrections Officers may accrue (or "bank") up to 100 hours of compensatory time. (Hickey Decl., Exh. F, p. 29.) After the 100-hour maximum is reached, a Corrections Officer is no longer given the choice of earning compensatory time in lieu of overtime pay. (Hall Decl. ¶ 9.) Pursuant to the CBA, Corrections Officers are entitled to "cash in" up to 80 hours of accrued compensatory time each calendar quarter. (Hickey Decl., Exh. F, p. 29-30; Hall Decl. ¶ 9; Newman Tr. 18:16-21; Haner Tr. 38:3-11.)

1283373.1

**Minimum Staffing Level**

Corrections Officers are assigned to a number of different positions or "posts" on each shift. (Engert Decl. ¶ 8.) The New York State Commission of Correction has prepared a "Staffing Analysis for the Niagara County Jail," which sets forth the minimum number of posts that must be covered in order to comply with relevant laws and regulations, including 9 NYCRR Part 7041, Staffing Requirements. (Engert Decl. ¶ 8, Exh. A.)

The number of posts that must be covered by Corrections Officers varies from shift to shift, and it even varies from day to day with respect to a particular shift. (Engert Decl. ¶ 10.) On any given day, additional posts may be required for a variety of reasons, such as escorting an inmate to court or a medical appointment, guarding an inmate at the hospital, performing additional supervision for suicide prevention, providing specialized security details within the jail (CERT coverage), providing heightened security details for high-risk inmates at court, escorting building contractors in secure areas of the jail, transferring inmates from jails in other jurisdictions to local courts, or meeting increased needs caused by increased inmate population. (Engert Decl. ¶ 10; *see* Newman Tr. 30:13-18.)

In order to maintain the minimum staffing level for each shift, the County has determined that it cannot currently approve, in advance of the shift, more than six Corrections Officers to be off from work for the day shift, more than five to be off from work for the afternoon shift, or more than three to be off from work for the midnight shift. (Engert Decl. ¶ 11; Werth Tr. 28.) These numbers were set by taking into account the following factors: (a) the minimum number of posts that must be covered pursuant to the Staffing Analysis for the Niagara County Jail prepared by the New York State Commission of Correction; (b) the requirements of New York State regulations, including 9 NYCRR § 7041.2; (c) the number of Corrections Officers; (d) best

1283373.1

practices to effectively serve penological interests of the Jail; (e) any special needs that may arise (including, but not limited to, special assignments/posts, inmate transportation and supervision needs, and Corrections Officers' disability leaves, bereavement leaves, military leave, and call offs); and (f) the need to ensure Corrections Officers have the ability to take the paid leave to which they are entitled under the CBA. (Engert Decl. ¶ 12.)

Even with the County setting the number of advance leave requests it will approve, there are still many times when more than six Corrections Officers are off from work on the day shift and many times when there is an insufficient number of Corrections Officers to cover the required posts for the shift. (Engert Decl. ¶ 13.) This generally occurs as a result of a Corrections Officer calling off from work shortly before the start of the shift (normally due to illness) or because of additional special posts being required. (*Id.*) In those situations, in order to ensure minimum staffing levels are met, the County generally seeks Corrections Officers who are not scheduled for that shift to volunteer to work and be given the option of receiving overtime pay at a rate of one and a half times their regular rate of pay or compensatory time at a rate of one and one-half times the applicable hours. (Engert Decl. ¶¶ 6, 14; Werth Tr. 36-37; Newman 32:17-22, 33:1-13, 57:14-22.) If there are no volunteers, then the County will attempt to cover the shift with a part-time Corrections Officer. However, the number of hours for which the County may use part-time Corrections Officers is limited on a weekly and annual basis and by the availability of part-time Corrections to work on short notice due to other employment and/or obligations. If the County is unable to cover the shift with a part-time Corrections Officer (which is often the case), the County must force a full-time Corrections Officer to work the shift and be paid at the overtime rate or receive compensatory time. (Engert Resp. Decl. ¶ 9.)

For a number of reasons (including Corrections Officers calling off sick from work and special posts being added temporarily), Corrections Officers perform overtime work quite frequently. (Engert Decl. ¶ 15; Hall Decl. ¶ 7.) 33.   In 2012, the total number hours for which Correction Officers received overtime pay was 12,032.75. In 2013, 2014, 2015, and 2016, the total number of hours was 17,893.50, 18,181.83, 15,063.83, and 19,573.75, respectively.

**Time Off Requests**

While Corrections Officers are always permitted to submit requests to use compensatory time, vacation days, "e-days," holidays, or personal days throughout the year (subject to the deadlines for such requests set forth in the CBA), they also have the ability to schedule their contractual time off in or about December of the prior year. (Engert Decl. ¶ 16; Newman Tr. 14:7-18; Werth Tr. 21:5-16.) This process of scheduling contractual leave was jointly developed by the County and the Union in order to help Union members use their contractual leave on the dates most desirable to them. (Engert Decl. ¶ 17.)

Pursuant to this process, starting in or about December of each year, Corrections Officers are given the opportunity to schedule their contractual time off, generally in order of seniority. (Engert Decl. ¶¶ 16-18.) In the first round of this process, Union members, in order of seniority, are given the opportunity to schedule any number of their "e-days" and vacation days. (Engert Decl. ¶ 18.) Once all Union members have been given an opportunity to schedule their "e-days" and vacation days, then the process proceeds to the second round. (Engert Decl. ¶ 18.) In the second round of the process, Union members, again in order of seniority, are given the opportunity to schedule any number of their paid holidays and personal days. (Engert Decl. ¶ 18.)

1283373.1

Thereafter, Union members may submit requests to use any remaining paid time off, including compensatory time, throughout the year. (Engert Decl. ¶ 19; Werth Tr. 21:17-23,22:1-4.) To schedule the use of compensatory time in advance during the year, a Corrections Officer is expected to submit a request through a computer program called the "COSS" system. (Engert Decl. ¶ 20; Werth Tr. 22:1-4; Shawver Tr. 28:3-10.) The County maintains records of those requests, which generally show when the request was made, the date requested off, and whether and when the request was approved or denied. (Engert Decl. ¶ 20.)

Again, in order to maintain the minimum staffing level for each shift, the County has set the number of Corrections Officers that can receive advance approval to be off from work. (Engert Decl. ¶ 21.) If a Corrections Officer asks to use paid time off (which would include compensatory time) on a date that cannot have any additional Corrections Officers pre-approved to be off, then the request is denied. (*Id.*) This is done to ensure minimum staffing levels are met. (*Id.*)

Significantly, when submitting a request for time off in COSS, a Corrections Officer has the ability to see which dates are available for advance approval and which dates are not. (Engert Decl. ¶ 22; Werth Tr. 22:1-4; Haner Tr. 100:20-23, 101:1-3.) **In other words, the Corrections Officer has the ability to know and select a date that is available for advance approval.** If such a date is selected, then the time off request is likely to be approved. (Engert Decl. ¶ 22; Werth Tr. 22:1-4.) Records related to Plaintiffs' compensatory time requests show that, when a request is for a day that is available for advance approval, the request is generally granted the day it is made or within a few days thereafter. (Engert Decl. ¶ 23, Exh. B.)

Further, **even if a time off request does not receive advance approval, a Corrections Officer may verbally renew the request on the day in question.** (Engert Decl. ¶ 24; Werth Tr.

22:5-15, 27:5-8; Haner Tr. 77:14-23,78:1-23, 79:1-23.) If there are enough Corrections Officers to handle all necessary posts and minimum staffing needs, then the Corrections Officer's renewed request can be granted. (Engert Decl. ¶ 24; Werth Tr. 42:5-16.)

**Plaintiffs' Requests to Use Compensatory Time**

Plaintiffs have accrued compensatory time by either: (a) choosing to receive compensatory time instead of overtime pay; or (b) attending CERT training. (Engert Decl. ¶ 25; Hall Decl. ¶ 10.) As explained, a Corrections Officer is not required to actually work over 40 hours in a week to receive overtime pay or compensatory time. (*See* Engert Decl. ¶ 25; Hall Decl. ¶ 10.) During the relevant time period, Plaintiffs earned compensatory time in a workweek even though they did not actually work 40 hours. (*See* Hall Decl. ¶ 11.) In fact, since they receive a daily paid meal break, on the occasions Plaintiffs received compensatory time, at least a portion of it was not related to actual hours worked over 40. (Hall Decl. ¶ 6.)

Plaintiff Newman has never had a request to use compensatory time denied. (*See* Newman Tr. 19:12-19.) The other three Plaintiffs have occasionally had requests to use compensatory time denied during the relevant time period. Each time, the reason for the denial was that, at the time the request was made, no additional Corrections Officers could receive advance approval to be off from work for the particular shift in order to ensure minimum staffing levels were met. (Engert Decl. ¶¶ 28-30.) Each time, they could have renewed the request on the day in question and, if there was sufficient coverage, receive the day off. (*Id.* ¶ 22; *see* Werth Tr. 22:5-15, 27:5-8, 42:5-16; Haner Tr. 77:14-23,78:1-23, 79:1-23.) Each time, they could have also selected a date they knew was available for advance approval, rather than the one they selected. (Engert Decl. ¶ 22.)

11

1283373.1

**Plaintiff Newman**

Records from the County's COSS system listing approvals and denials of compensatory time requests occurring in or about May 2011 through August 2017 show that Plaintiff Newman submitted 18 requests to use compensatory time. With the exception of two requests that Plaintiff Newman has admitted submitting by mistake (*see* Newman Tr. 29:14-23, 30:1-2), all of Plaintiff Newman's compensatory time requests have been approved. Currently, Plaintiff Newman has 24.417 hours of accrued but unused compensatory time which, as noted above, he has the ability to cash in each calendar quarter, including on this September 30, 2017.

**Plaintiff Werth**

Records from the County's COSS system listing approvals and denials of compensatory time requests occurring in or about May 2011 through August 2017 show that Plaintiff Werth had 63 requests to use compensatory time approved and 5 requests to use compensatory time denied. Plaintiff Werth's requests were denied because, on each of the dates requested off, no additional Corrections Officers could receive advance approval to be off from work for the particular shift in order to ensure minimum staffing levels were met. (Engert Decl. ¶ 28; *see* Werth Tr. 28:8-20.) Currently, Plaintiff Werth has 72.250 hours of accrued but unused compensatory time which, as noted above, he has the ability to cash in each calendar quarter, including on this September 30, 2017.

**Plaintiff Shawver**

Records from the County's COSS system listing approvals and denials of compensatory time requests occurring in or about May 2011 through August 2017 show that Plaintiff Shawver had 32 requests to use compensatory time approved and 6 requests to use compensatory time denied. Plaintiff Shawver's requests were denied because, in order to ensure minimum staffing levels were met, no additional Corrections Officers could receive advance approval to be off

1283373.1

from work for the particular shift for which he sought to use compensatory time. (Engert Decl. ¶ 29.)

Currently, Plaintiff Shawver has 75.375 hours of accrued but unused compensatory time which, as noted above, he has the ability to cash in each calendar quarter, including on this September 30, 2017. Significantly, during the relevant time period, the majority of compensatory time earned by Plaintiff Shawver resulted from his attendance at CERT training. (Shawver Tr. 9:11-16.)

**Plaintiff Haner**

Records from the County's COSS system listing approvals and denials of compensatory time requests occurring in or about May 2011 through August 2017 show that Plaintiff Haner had 105 requests to use compensatory time approved and 36 requests to use compensatory time denied.

Between in or about May 2011 and the end of that year, Plaintiff Haner had 19 requests to use compensatory time approved and 4 requests denied. (Hall Decl., Exh. G.) She testified that one of her denied requests (for 8/4/11) was not an actual denial. (Haner Tr. 85:12-18.) Instead, she asked that it be denied because she had submitted it by mistake. (*Id.*; Hickey Decl., Exh. G.)

In 2012, Plaintiff Haner had 11 requests to use compensatory time approved and 1 request denied. (Hall Decl., Exh. G; Haner Tr. 92:5-23, 93:1.) In 2013, she had 18 requests to use compensatory time approved and 5 requests denied. (Hall Decl., Exh. G; Haner Tr. 94:17-21.)

In 2014, the year in which this lawsuit was filed, Plaintiff Haner's pattern of requests dramatically changed. Just prior to the filing of the Amended Complaint in this matter, Plaintiff Haner had 5 requests to use compensatory time approved and 8 requests denied. (Hall Decl.,

13

Exh. G.) As of the end of that year, she had 8 requests to use compensatory time approved and 25 requests denied.[3] (Hall Decl., Exh. G.)

In 2015, Plaintiff Haner's requests reverted back to their prior pattern. That year, Plaintiff Haner had 10 requests to use compensatory time approved and 1 request denied. In 2016, she had 24 requests to use compensatory time approved and no requests denied. In 2017, she had 15 requests to use compensatory time approved and no requests denied.

Other than the 8/4/11 request noted above, Plaintiff Haner's requests were denied because, in order to ensure minimum staffing levels were met, no additional Corrections Officers could receive advance approval to be off from work for the particular shifts for which she sought to use compensatory time. (Engert Decl. ¶ 30.)

Significantly, at the end of 2014 (the year in which she became a Plaintiff in this lawsuit and the year in which she had the largest number of requests and the largest number of denials), Plaintiff Haner had 12.5 hours of earned but unused compensatory time. (Hall Decl. ¶ 21, Exh. H; Haner Tr. 109:1-10.) In other words, Plaintiff Haner had used or been compensated for all of her compensatory time except for the equivalent of a day and a half of work in 2014. Thus, Plaintiff Haner did not have enough compensatory time to cover all of the days she requested to use it but was denied. (*See* Hall Decl., Exhs. G-H; Haner Tr. 136:11-23, 137:1-5.) Presently, **Plaintiff Haner has no earned but unused compensatory time remaining**.

---

[3] As noted above, when submitting a request, Plaintiff Haner can tell, through the COSS system, which dates are available for advance approval and which dates are not. Further, if denied, she can renew her request for time off on the actual day requested off.

1283373.1

## DISCUSSION

I.   **Plaintiffs Cannot Prevail on Their FLSA Claim Because the County Complied With the Statute's Fundamental Requirements.**

The FLSA's fundamental requirement is that employers must pay their employees: (a) minimum wage for all hours worked; and (b) overtime compensation equal to one and one-half times their regular rate of pay for all hours worked over 40 in a workweek. *See* 29 U.S.C. §§ 206(a), 207(a).

Section 207(o) of the FLSA, which serves as the sole basis for Plaintiffs' claims, sets forth a limited exception to this general rule that is only available to public agencies like the County. Specifically, Section 207(o) allows employees of the County to receive, "in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required…." 29 U.S.C. 207(o)(1).

Under the statute, employees may only earn compensatory time off in lieu of overtime if it is earned pursuant to "a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees…." 29 U.S.C. 207(o)(2). Accordingly, the County, the Sheriff and the Union negotiated a provision in the CBA permitting Union members to choose to accept compensatory time in lieu of monetary overtime compensation. (*See* Hickey Decl., Exh. F.) Under the CBA, Corrections Officers are also entitled to "cash in" up to 80 hours of accrued compensatory time each calendar quarter.

The drafters of Section 207(o) were concerned with the possibility that a public employer could solely grant compensatory time to employees when they work overtime and then make it so the employees could not use the compensatory time. As a means to prevent public employers from avoiding their FLSA obligations in this manner, Section 207(o)(5) provides that, if an employee who has earned compensatory time in lieu of overtime compensation under the FLSA

**requests** to use such compensatory time, then he/she "shall be permitted…to use such time within a reasonable period after making the **request** if the use of the compensatory time does not unduly disrupt the operations of the [employer]." 29 U.S.C. § 207(o)(5). As explained by the Supreme Court, Section 207(o)(5) is "better read not as setting forth the exclusive method by which compensatory time can be used, but as setting up a safeguard to ensure that an employee will receive timely compensation for working overtime." *Christensen v. Harris County*, 529 U.S. 576, 583-84 (2000).

Here, there is no need for Section 207(o)(5)'s safeguard. The County does not restrict the ability of Corrections Officers to receive "timely compensation for working overtime." When Plaintiffs have been awarded compensatory time, it is because **they chose to receive it** instead of overtime pay. **They are not required to take compensatory time.** They can receive cash payment for overtime right after they work it. Further, they can – and do – periodically "cash in" their compensatory time. (*See* Haner Tr. 38:3-11; Shawver Tr. 23:5-10.) Thus, **at almost any given time, Plaintiffs can receive monetary compensation for their overtime.** As there are no restrictions on Plaintiffs' ability to receive timely compensation for working overtime, the fundamental requirements of the FLSA are being met. There is simply no basis to claim the County is violating the FLSA.

**II.     Plaintiffs Cannot Prevail on Their Claim Alleging a Violation of Section 207(o)(5) of the FLSA.**

Notwithstanding the County's compliance with the FLSA's fundamental requirements, with respect to compensatory time Plaintiffs have chosen to accrue, the County's system for handling requests to use that time and its reasons for occasionally denying such requests fully comply with Section 207(o)(5). Thus, even if Plaintiffs did not have the ability to receive cash payment for their overtime, there is still no basis for any FLSA claim.

1283373.1

**A.**     **Legal Standard and Burdens of Proof Applicable to Plaintiffs' Section 207(o)(5) Claim.**

As stated above, Section 207(o)(5) provides that, if an employee who has earned compensatory time in lieu of overtime compensation under the FLSA "has requested the use of such compensatory time," then he/she "shall be permitted…to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the [employer]." 29 U.S.C. § 207(o)(5).

The parties' submissions related to their summary judgment motions made it abundantly clear that they disagreed as to the proper interpretation of Section 207(o)(5)'s requirements. However, in his Report and Recommendation, Magistrate Roemer settled that issue and adopted the County's interpretation of the statute. *See* Dkt. No. 38 ("R&R"), p. 13. Therefore, that is the interpretation of Section 207(o)(5) that should be followed at trial.

Specifically, the Report and Recommendation states that "[t]he Court finds the reasoning of the Fifth Circuit, the Ninth Circuit, and the Southern District of New York to be more persuasive than the case law relied upon by plaintiffs. Section 207(o)(5) **does not**, as plaintiffs contend, **require an employer to grant time off on the specific date requested by the employee** absent an undue disruption to the employer's operations." R&R, p. 13. The Report and Recommendation then favorably quotes the Southern District of New York's following explanation of how Section 207(o)(5) is to be interpreted:

> [T]he "reasonable period" referenced in section 207(o)(5) refers to the time period between the date for which the employee applies for leave and the date on which that leave is actually granted. Section 207(o) contains a clear expression of congressional intent as to the disputed issue — the meaning of "reasonable period." . . . For instance, the phrase "unduly disrupts" is not subsumed by the words "reasonable period," but provides an exception to the employer's statutory obligation to accommodate the employee's request within a "reasonable period."

17

*Scott v. City of New York*, 340 F. Supp. 2d 371, 380 (S.D.N.Y. 2004).

Based on this interpretation, Plaintiffs have the burden of proving, by a preponderance of the evidence, that the County routinely failed to permit them to use compensatory time within a reasonable time period of the dates they requested to use such time. In order to meet that burden and prove a statutory violation, Plaintiffs will need to, at a minimum, produce evidence showing that they "requested the use of…compensatory time" and that the County did not permit them to use such compensatory time "within a reasonable period" before or after the date they requested to use it. *See* 29 U.S.C. 207(o)(5). Plaintiffs cannot meet their burden.

That said, even if Plaintiffs could meet their burden of proving that the County failed to permit them to use of compensatory time within a reasonable period of the dates they requested, that failure must be excused if the County proves, by a preponderance of the evidence, that granting the request would have caused an undue disruption to the operations of the employer. *See Scott v. City of New York*, No. 02-CV-09530, Dkt. No. 274, at 5-8 (S.D.N.Y. November 24, 2008) (rendering decision related to jury instructions). As explained in *Parker v. City of New York*, 2008 U.S. Dist. LEXIS 38769 (S.D.N.Y. May 13, 2008), "the phrase 'unduly disrupts' in the provision is not subsumed by the words 'reasonable period' but provides an exception to the employer's statutory obligation to accommodate the employee's request within a 'reasonable period.'" *Id.* at *24 (internal quotation omitted). Thus, if a Corrections Officer's request to use compensatory time on a certain date would "unduly disrupt" the County's operations, then the request may be denied and "the Court [or the jury] need not determine whether Plaintiffs' requests were granted within a reasonable period of time." *Id.* at *29.

Here, as further discussed below, on the limited occasions Plaintiffs' requests were denied, they were denied in order to preserve minimum staffing levels and, accordingly, to avoid

undue disruption to the operations of the Jail. Thus, the exception set forth in Section 207(o)(5) is applicable. As a result, even if the jury finds that the County failed to meet the "reasonable period" requirement, the County cannot be found to have violated Section 207(o)(5).

### B.    The Reasonable Period Applicable to This Case.

The term "reasonable period," as used in Section 207(o)(5), is not defined in the law. As a result, it is necessary to look to other sources to determine what may constitute a "reasonable period" in this case. Luckily, the Ninth Circuit considered that issue in a factually analogous context.

In *Mortensen v. Cty. of Sacramento*, 368 F.3d 1082 (9th Cir. 2004), the plaintiffs sued their employer for allegedly violating Section 207(o)(5). There, the Collective Bargaining Agreement applicable to the plaintiffs set forth a one-year period for the employer to either grant or cash out compensatory leave time. The Ninth Circuit construed that one-year period to be a "reasonable period." *Id.* at 1090-91 ("Although the Agreement does not use the term 'reasonable period,' it plainly provides a time period for the county to either grant [compensatory time off] or pay out its cash value.").

Here, the CBA contains a substantially similar (but even shorter) provision.[4] Here, Corrections Officers (like Plaintiffs) need not take compensatory time at all. If they do, they may cash out their compensatory time quarterly if they have not yet used it. (*See* Dkt. No. 31-5, Hickey Aff., Exh. F, p. 30.) Thus, applying the reasoning in *Mortensen* to this case, the applicable CBA indicates that the "reasonable period" is a no shorter than a calendar quarter.

---

[4] The only differences between the provision in *Mortensen* and the provision in the CBA here is that the period of time is shorter (a calendar quarter versus a year) and the Corrections Officers have the option of cashing out their compensatory time (as opposed to being required to do so). Both of these differences benefit the Corrections Officers. Neither of these differences distinguishes this case from *Mortensen* in a way that would render its logical way of defining the "reasonable period" inapplicable to this case.

1283373.1

Corrections Officers can use their compensatory time within that period of time or, if they are unable to do so, they can cash it out and receive monetary compensation (i.e., their original overtime hours). Regardless of which situation occurs, there is no harm to the Plaintiffs and no violation of the FLSA.

     **C.**    **Plaintiffs Cannot Meet Their Burden of Proving That the County Routinely Failed to Permit Them to Use Compensatory Time Within a Reasonable Period of the Date They Requested to Use It.**

Plaintiffs cannot prove that the County's handling of Plaintiffs' compensatory time violated Section 207(o)(5)'s "reasonable period" requirement. As explained above, under the proper and applicable interpretation of Section 207(o)(5), "**employers are not obligated to grant compensatory time on the precise day an employee requests it.**" *Scott*, 592 F. Supp. 2d 306, 403 (S.D.N.Y 2008). Additionally, employers are not required to provide alternative dates on which compensatory time might be taken when denying a compensatory time request. *See id.* at 403-04; *Parker*, 2008 U.S. Dist. LEXIS 38769 at \*27. "Rather, so long as requests are not routinely denied, **an employer may require an employee to file a new request asking for different days off**." *Scott*, 592 F. Supp. 2d at 404.

There is no evidence that the County "routinely denied" Plaintiffs' requests to use compensatory time. To the contrary, the number of requests approved and denied for each Plaintiff shows that their requests are **routinely granted**. Collectively, from in or about May 2011 through August 2017, Plaintiffs had 216 requests granted and 49 denied. Thus, **Plaintiffs' requests to use compensatory time were granted 81.5% of the time.**

With respect to the limited denials, as explained by the Supreme Court in *Christensen*, the FLSA allows, but does not require, the County to arbitrarily pick a different day for the employee to take off (nor does it require the County to offer alternative dates). Although the

County may assign a date to the employee, it instead asks the employee to submit a new request for a different day off. This is not only compliant with the FLSA; it also benefits the employees. Corrections Officers are afforded the opportunity to select a day off that is agreeable to them instead of having their day off selected for them, even though the Supreme Court has held that the County is permitted to do exactly that.

When submitting a request to use compensatory time through the COSS system (whether for the first time or after receiving a denial), **a Corrections Officer has the ability to see which dates are available for advance approval and which dates are not.** (Engert Decl. ¶ 22; Werth Tr. 22:1-4; Haner Tr. 100:20-23, 101:1-3.) If a Corrections Officer submits a request to use compensatory time and that request is denied, he/she can **immediately** go into the COSS system, view all available dates, and **select one for which his/her compensatory time request will be granted**. Clearly, a Corrections Officer's ability to use compensatory time is not unreasonably delayed when, at any given time, he/she can log into the COSS system and request to use compensatory time on one of many available dates.

Plaintiffs have no admissible evidence to establish that there was a lack of available dates from which Plaintiffs could choose to submit a request to use compensatory time during the relevant time frame. The admissible evidence clearly shows that there were numerous dates available for compensatory time use. Plaintiffs all work the day shift. Collectively, between May 2011 and August 2017, Plaintiffs (who are only 4 of the 112 total Corrections Officers) were approved to use compensatory time on 200 different days. Thus, there were, **at an absolute minimum**, 200 days available to the Plaintiffs to request and receive approval for the use of compensatory time. Significantly, when that figure is extrapolated out to the 112 total Corrections Officers, the number of different days on which compensatory time was approved

1283373.1

(and, thus, the minimum number of days available for compensatory time usage) becomes significantly larger.

Moreover, Plaintiffs have no admissible evidence showing that the dates available for compensatory time use were not within a "reasonable period" of the dates for which they had a request to use compensatory time denied. Thus, they cannot prevail on their Section 207(o)(5) claim. To paraphrase the statute, Plaintiffs cannot prove that they "requested the use of compensatory time," had it denied, and then did not have the ability to use their compensatory time within a "reasonable period."

In fact, the admissible evidence shows that there was never an unreasonable delay between a date for which a Plaintiff requested to use compensatory time and a date for which compensatory time was – or could have been – actually used. A review of the County's records shows that at least one, and almost always multiple, Corrections Officers used compensatory time within a little over a one month following the date for which a Plaintiff had a compensatory time request denied. Indeed, during the time period of May 2011 through August 2017, the **longest period of time** between the date a Plaintiff was denied the use of compensatory time and the date a Corrections Officer was approved to use the same amount of compensatory time or more is **35 calendar days**. If a Corrections Officer was approved for compensatory time for a specific date, then that date was obviously available for compensatory time approval, and 35 days (especially as the longest period of time) is eminently reasonable. Simply put, plenty of dates were available for compensatory time usage within a "reasonable period."

The County cannot be held liable for a Plaintiff's failure to submit a request for one of the many available dates. Indeed, based on the facts of this case, the only conclusion to be drawn is that Plaintiffs "did not make use of their compensatory time within a reasonable period of their

1283373.1

requested date, not that the [County] failed to make such a date available to them." *Parker*, 2008 U.S. Dist. LEXIS 38769, at *29 (finding that such evidence does not support a FLSA claim). Simply put, Plaintiffs cannot – and will not – be able to prove a violation of Section 207(o)(5) at trial.

> **D.      Even If Plaintiffs Could Meet Their Burden, Plaintiffs Cannot Prevail on Their Claim Because the County Can Establish That It Denied Compensatory Time Requests to Avoid Undue Disruption to Its Operations.**

Even if Plaintiffs can prove that the County violated the "reasonable period" requirement (which, as explained above, they cannot), the County is still in compliance with Section 207(o)(5) of the FLSA because the "undue disruption" exception applies. As explained above, when the undue disruption exception applies, a request to use compensatory time may be denied and there is no violation of the statute. It does not matter whether the use of compensatory time off was permitted within a reasonable period. *See Parker*, 2008 U.S. Dist. LEXIS 38769 at *29.

Here, the undue disruption exception applies because, on the limited occasions when Plaintiffs' requests were denied, they were denied pursuant to a system designed to preserve mandatory minimum staffing levels. Courts have specifically held that employers are permitted to deny compensatory time off requests to preserve minimum staffing levels because granting such requests would create an undue disruption. *See id.* at *29-30; *see also Houston Police Officers' Union v. City of Houston*, 330 F.3d 298, 306-07 (5th Cir. Tex. 2003) (finding no cognizable claim where evidence demonstrated that denials of compensatory time were to avoid understaffing); *Cole v. City of Port Arthur*, 2014 U.S. Dist. LEXIS 96754, *27 (E.D. Tx. July 16, 2014) ("On the occasions that [plaintiff] was denied the use of his comp time, it was due to minimum staffing requirements, and his absence on those days would have caused the department undue disruption.").

The County will establish at trial that, each time a Plaintiff had a request to use compensatory time denied, the County denied the request because no additional Corrections Officers could receive advance approval to be off from work for the particular shift for which the Plaintiff sought to use compensatory time. (Engert Decl. ¶¶ 28-30.) The County set the number of advance leave requests it will approve for each shift by taking into account the following factors: (a) the minimum number of posts that must be covered pursuant to the Staffing Analysis for the Jail prepared by the New York State Commission of Correction; (b) the requirements of New York State regulations, including 9 NYCRR § 7041.2; (c) the number of Corrections Officers; (d) best practices to effectively serve penological interests of the Jail; (e) any special needs that may arise (including, but not limited to, special assignments/posts, inmate transportation and supervision needs, and Corrections Officers' disability leaves, bereavement leaves, military leave, and call offs); and (f) the need to ensure Corrections Officers have the ability to take the paid leave to which they are entitled under the CBA. (Engert Decl. ¶ 12.)

Plaintiffs have not – and cannot – dispute that the County engaged in this analysis when setting the limitation on advance approval of leave requests. An explanation of the County's analysis and this exact list of factors were set forth in paragraph 29 of the County's Statement of Material Facts submitted with its summary judgment motion. (Dkt. #31-1, ¶ 29.) Plaintiffs' response to that paragraph contains **no denial** that an analysis of the listed factors was performed by the County in determining the number of leave requests that can be approved in advance of a given shift. (*See* Dkt. #33-1, ¶ 29.) Thus, the fact that the County performed such an analysis is undisputed.

The undisputed nature of the County's analysis is significant because the analysis clearly demonstrates that the driving force behind the limitation on advance approval is the preservation

1283373.1

of minimum staffing levels. Again, it is well-established that preserving staffing levels is a permissible reason to withhold approval of compensatory time use within a reasonable period pursuant to the undue disruption exception.

Faced with the County's clear evidentiary support for the undue disruption exception, Plaintiffs have suggested that, whenever they submitted a request to use compensatory time on a day that was not available for advance approval, the County should have nonetheless granted their request and been forced to call other Corrections Officers into work on overtime (and pay them one and one-half times their regular rate of pay or provide compensatory time at a rate of one and one-half times the applicable hours) to preserve the minimum staffing level. This is not required of the County. *See Parker*, 2008 U.S. Dist. LEXIS 38769 at *34 (holding that the FLSA does not require employers to grant compensatory time when doing so would require the payment of overtime to replacement employees); *see also Scott*, 592 F.Supp.2d at 404. As succinctly explained by the Ninth Circuit in *Mortensen*, 368 F.3d at 1090:

> If [plaintiff] could force the county to pay another deputy overtime so that he could use his [compensatory time off], then the purpose for § 207(o) would be eviscerated. This requirement would burden the county considerably by increasing the overtime that it must pay to employees. If implemented, [plaintiff]'s proposed construction would remove the flexibility and control from the county that is clearly contemplated by the FLSA.

To the extent Plaintiffs claim that the County denies the occasional compensatory time request merely as a way to avoid the payment of overtime, there is simply no evidence to support such a claim. Notably, when Plaintiffs are eligible for overtime, **they have the option of immediately receiving overtime pay**. Further, even if they choose to be awarded compensatory time, they have the ability to cash it in quarterly. Thus, the County is not avoiding payment of overtime to Plaintiffs. Further, the evidence plainly demonstrates that Corrections Officers work

25

a large amount of overtime. The total number of hours for which Corrections Officers received overtime pay during the years 2012, 2013, 2014, 2015, and 2016 was 12,032.75 hours, 17,893.50 hours, 18,181.83 hours, 15,063.83 hours, and 19,573.75 hours, respectively. It is reasonable, and permissible under the FLSA, for the County to deny compensatory time requests in order to maintain minimum staffing levels and lessen the burden on Corrections Officers and the operations of the Jail that results from additional overtime. *See Parker*, 2008 U.S. Dist. LEXIS 38769 at *34 (rejecting juvenile counselors' claim that their employer should grant compensatory time requests by calling off-duty workers in on overtime because "the FLSA does not impose such a requirement" and because evidence showed "[juvenile counselors] already work overtime tours on a regular basis in an effort to maintain the statutory staff-resident ratios" at the juvenile detention facility).

In sum, the County performed an extensive analysis of various factors to determine the number of leave requests that can receive advance approval for a particular shift without jeopardizing its ability to comply with minimum staffing requirements. This is not an exact science because it is impossible to know in advance precisely how many Corrections Officers will be needed for a particular date and shift. There are many times when more than six Corrections Officers are off from work on the day shift and many times when there is an insufficient number of regularly-scheduled Corrections Officers to cover the required posts for the shift. (Engert Resp. Decl. ¶ 8; Haner Tr. 112:1-8, 124:17-19, 126:21-22; Werth Tr. 42:21-23, 43:1-5, 22-23.). In those instances, the County must incur overtime to cover the required posts. There are also times when there are slightly more than enough Corrections Officers to handle all necessary posts and minimum staffing needs. On those occasions, it is undisputed that a Corrections Officer may verbally renew a compensatory time request on the day in question and

have that request granted. (Engert Decl. ¶ 24; Werth Tr. 22:5-15, 27:5-8, 42:5-16; Haner Tr. 77:14-23,78:1-23, 79:1-23.)

Given the day-to-day fluctuation in staffing needs, the County's process of setting the number of requests that can receive advance approval and then, if possible, permitting additional leave on the day in question is a perfectly reasonable way to handle leave requests. It provides Corrections Officers the ability to schedule leave in advance while avoiding undue disruption of Jail operations.

If the County's system for balancing the Corrections Officers' interests in scheduling their leave in advance against its own interest in avoiding undue disruption to Jail operations is found to be unnecessary and/or not compliant with Section 207(o)(5)'s requirements, then it is entirely unclear how the County could come into compliance. It places the County in an untenable position. Is the County required to grant every single compensatory time request submitted by a Corrections Officer? Given the existence of the undue disruption exception, that was clearly not Congress' intent when it drafted Section 207(o)(5).

Because the County's occasional denials of Plaintiffs' requests to use compensatory time resulted from the County's need to maintain minimum staffing levels in the Jail, the "undue disruption" exception is applicable and the County cannot be found in violation of Section 207(o)(5).

**III.    Plaintiffs Cannot Prevail to the Extent Their Claims Are Based on Compensatory Time Accumulated for Non-Statutory Overtime Hours.**

Pursuant to the CBA, members of the Union, which includes Plaintiffs, are entitled to earn one and one-half hours of compensatory time, at their option, for each hour they work over their "regular and normally scheduled" 8-hour work day or 40-hour workweek, up to a maximum of 100 hours of compensatory time. (*See* Hickey Decl., Exh. F, p. 29; Haner Tr. 42.) Corrections

27

Officers receive this compensatory time regardless of whether they have actually worked 40 hours in a workweek. (Engert Decl. ¶ 6; Hall Decl. ¶ 4; Haner Tr. 42:4-23, 43:1-6; Hickey Decl., Exh. F, p. 28.) The County includes all hours paid (not just hours worked) in its calculation for purposes of awarding overtime pay or compensatory time. (Hall Decl. ¶ 5; Haner Tr. 42 ("When you've got forty hours of paid time per week, you go above that, you will get comp time if that's what you choose, or if you're over eight hours in a day, you can choose comp time.").) Paid time off (which includes vacation, holidays, e-days, personal days, sick days, compensatory time, and daily paid 30-minute meal breaks) accounts for some of the hours paid to a Corrections Officer in a week. (Hall Decl. ¶ 6.) As such, a Corrections Officer may have worked fewer than 40 hours in a week but still receive overtime pay or compensatory time. (Hall Decl. ¶ 6.) In fact, since Corrections Officers receive a daily paid meal break, at least a portion of the overtime pay or compensatory time awarded in any given week is not related to actual hours worked over 40.

In addition, compensatory time is not only earned in lieu of overtime pay. The CBA provides that Corrections Officers have the option of earning two hours of compensatory time for each hour spent at CERT training. (Hickey Decl., Exh. F, p. 28; *see* Shawver Tr. 6:1-23, 7:1-18). As stated in the CBA, "CERT training…consist[s] of 4 (four) hours of training per calendar month" and it is for "Corrections Officers who have successfully completed the Corrections Emergency Response Team Basic Academy…." (Hickey Decl., Exh. F, p. 28.) A Corrections Officer earns compensatory time for CERT training regardless of the number of hours he works during the week the training is held. (Hall Decl. ¶ 8; Shawver Tr. 7:12-16; Newman Tr. 17:9-11.) Significantly, Plaintiff Shawver earned the vast majority of his compensatory time by attending CERT training. (Shawver Tr. 9:11-16; Hall Decl. ¶ 19.)

While the requirements set forth in Section 207(o) apply to compensatory time earned in lieu of statutorily-required overtime pay, those requirements do not apply to non-statutory compensatory time, such as compensatory time earned for daily overtime, paid meal periods, paid time off, and CERT training. 29 U.S.C. § 207(o) (setting forth requirements pertaining to compensatory time provided "in lieu of overtime compensation"). Even if the statute was ambiguous on this point (which it is not), the Department of Labor has specifically stated that "the requirements of Section 207(o)…do not apply to 'other compensatory time….'" 29 CFR 553.28(e). The DOL defines "other compensatory time" as compensatory time earned for working in excess of a non-statutory requirement, such as "hours worked in excess of 8 in a day or for working on a scheduled day off in a nonovertime workweek." 29 CFR 553.28(a).

Thus, Plaintiffs must establish that the contested denial involved statutory compensatory time in order to establish a violation of Section 207(o)(5). This they cannot do given the ways compensatory time is awarded by the County.

**IV.     Plaintiff Newman Cannot Prevail in this Action Because He Never Had a Compensatory Time Request Denied During the Relevant Time Period.**

With respect to Plaintiff Newman, there is one additional (quite compelling) reason that his claims must fail: He had no requests to use compensatory time denied. The Amended Complaint alleges that the County violated Section 207(o) of the FLSA by unreasonably denying Plaintiffs' requests to use compensatory time on the days they requested. However, Plaintiff Newman has admitted that, with respect to the relevant time period, he has no knowledge of the County denying a single request made by him for the use of compensatory time. (Newman Tr. 19:12-19, 20:4-23, 21:1-4.)

While County records indicate that Plaintiff Newman had two compensatory time requests denied in 2015, these requests were only denied because they were **submitted by**

**mistake**. Plaintiff Newman admitted this fact during his deposition. (Newman Tr. 29:3-23.) According to Plaintiff Newman, right after he submitted these requests, "he called down to the sergeant's office and told him that it was a mistake, they were not supposed to be comp time." (Newman Tr. 29:3-23.) He further testified that these mistaken requests were appropriately denied. (Newman Tr. 30:1-2.)

Other than these two requests that were submitted by mistake, County records show that Plaintiff Newman has had no denied requests. As a result, Plaintiff Newman cannot establish a violation of Section 207(o)(5).

**V.      Plaintiffs' Potential Recovery in this Action is Limited.**

> **A.      The Relief Sought By Plaintiffs Is Not Available under the FLSA**

In the Amended Complaint, Plaintiffs state that they are seeking "an Order directing the Defendant to comply with the FLSA." (Am. Compl., p. 8). In their initial disclosures, Plaintiffs state that their "economic damages are rather minimal" and that "[t]hey are primarily seeking declaratory relief and attorneys' fees." (Hickey Decl., Exh. Y.) Injunctive and/or declaratory relief is not available under the FLSA, except in proceedings brought by the Secretary of Labor. *See Letouzel v. Eastman Kodak Co.*, 2006 U.S. Dist. LEXIS 33453, *13 (W.D.N.Y. May 25, 2006); *N.Y. State Court Clerks Ass'n v. Unified Court Sys. of N.Y.*, 25 F. Supp. 3d 459, 466 (S.D.N.Y. 2014).

In *Heitmann v. City of Chi.*, 560 F.3d 642 (7th Cir. Ill. 2009), the Seventh Circuit overturned the district court's award of injunctive relief related to a Section 207(o)(5) claim. In doing so, the circuit court explained some of the reasons for limiting the availability of injunctive relief:

> [I]njunctions can cause major disruptions to an employer's practices, even though most employees are satisfied with them, and

> can be impossible to bargain around. The statute leaves the heavy artillery to public officials--or to unions through collective bargaining. The police union could bargain for the sort of changes that these plaintiffs want to see made; so far, however, most officers seem willing to accept the City's practices. (Plaintiffs in this representative action are a small fraction of all police officers in Chicago.) A regulatory injunction is hard to administer, and although Congress was willing to involve the judiciary in this process when the Secretary serves as the principal monitor, allowing a handful of disgruntled employees (and their lawyer) to serve as monitors, displacing their representative in collective bargaining, would be unfortunate.

*Id.* at 644.

Here, as in *Heitmann*, Plaintiffs are a small fraction (4 out of 112) of all Corrections Officers employed by the County. Allowing this "handful of disgruntled employees (and their lawyer)" to displace the Union and force changes to County practices with which most Corrections Officers are satisfied would be unfortunate. Avoiding that unfortunate result is a primary reason that injunctive relief is not available under the FLSA. Because it is not available, Plaintiffs' request for such relief must be denied.[5]

As noted, Plaintiffs have also indicated that they seek attorneys' fees in this action. However, it is entirely unclear what basis Plaintiffs have for doing so. Each Plaintiff testified that he/she does not have a retainer agreement with the attorneys of record in this case and, accordingly, he/she is not obligated to pay any attorneys' fees. (Newman Tr. 34:13-18; Werth Tr. 14:2-6; Shawver Tr. 22:16-18; Haner Tr. 13:19-21.) Accordingly, Plaintiffs have no legitimate claim to be reimbursed for attorneys' fees in this matter, since none of them were obligated to pay any such fees.

---

[5] Plaintiffs do not dispute the unavailability of injunctive relief. Indeed, in response to the County's summary judgment motion, Plaintiffs acknowledged that the County is "correct in asserting that many courts have determined injunctive relief [in FLSA actions] is permissible only in suits by the Secretary of Labor." (Dkt. No. 33-2, Pl. Resp., p. 14 fn. 2.)

1283373.1

B.      **The Monetary Relief for Plaintiffs' Claims is Limited and Already Available to Them.**

Plaintiffs are seeking only injunctive relief in this action which, as discussed, is not available. The only relief that is available to Plaintiffs (in the event they are able to prove their claim, which they are not) is monetary. However, Plaintiffs do not seem interested in the potential monetary relief. That is not particularly surprising, since the monetary relief that they could receive if they prevail in this action is already available to them.

The FLSA clearly provides that, in the event an employer violates the statute's requirements, the injured employee is entitled to his/her "unpaid overtime compensation." 29 U.S.C. § 216(b). That provision is no less applicable when it comes to claims involving compensatory time. Indeed, as explained in *Heitmann v. City of Chicago*, 560 F.3d 642 (7th Cir. 2009), where the court found a violation of Section 207(o)(5) based on an incorrect interpretation of the statute, "[a]ny injury is compensable by money; a larger paycheck is the normal remedy under the Fair Labor Standards Act, and it is hard to see why money damages would be inadequate for an employer's violation of §207(o)(5)." *Id.* at 644.

In a case, like this one, alleging violations of Section 207(o)(5)'s requirements, "the money damages" or "unpaid overtime compensation" that an employee could recover is the employee's unused compensatory time that he/she accrued in lieu of statutory overtime. *See Lupien v. City of Marlborough*, 387 F.3d 83, 87 (1st Cir. 2004) (holding that "unused, banked comp time is…the correct measure for compensatory damages" in a case asserting a violation of Section 207(o)(5)). In other words, if they prevail in this matter, Plaintiffs are entitled only to a payout of their accrued but unused compensatory time.

Here, there is no need for a Court order or jury verdict awarding Plaintiffs compensation for their accrued but unused compensatory time. This is because, as discussed above, monetary

1283373.1

compensation for Plaintiffs' overtime hours and/or compensatory time is readily available to them. They can receive cash payment for overtime right after they work it. There is no requirement that they take compensatory time in lieu of monetary compensation. Further, Plaintiffs can – and do – "cash in" their compensatory time quarterly. (*See* Dkt. No. 31-5, Hickey Aff., Exh. F, p. 30; Haner Tr. 38:3-11; Shawver Tr. 23:5-10.) Thus, at almost any given time, **Plaintiffs can receive monetary compensation for their overtime.** As they can already receive such compensation, it was entirely unnecessary for Plaintiffs to commence this action – and it is likewise unnecessary for them to proceed with a trial – to obtain it.

Even if, after a jury verdict in their favor, Plaintiffs are awarded the monetary relief that is already available to them, such relief is extremely limited for a number of reasons. As discussed, that monetary relief would be a payout of each Plaintiff's bank of accrued but unused compensatory time. Plaintiff Newman had no compensatory time denials, so there is no basis for him to be awarded any damages in this case. Plaintiff Haner's compensatory time bank is empty (because she has been able to use all of it), so there is no compensatory time to be paid out. Plaintiff Shawver has 75.375 hours remaining in his compensatory time bank; however, the vast majority of his compensatory time was earned for attending CERT training and, accordingly, is not covered by the FLSA. All of the Plaintiffs' compensatory time balances are below the CBA's 80-hour threshold and can be cashed out quarterly, including on this September 30, 2017. In fact, we contend that they have a duty to mitigate their damages by taking advantage of their ability to cash out. This limited (and, for some, non-existent) relief, which is already available to Plaintiffs, is all they could be awarded at trial.

1283373.1

**C.** **Plaintiffs Are Not Entitled to Liquidated Damages Because The Evidence Shows that the County Had and Has a Good Faith Belief That It Complies with Section 207(o)(5)'s requirements.**

As discussed above, if Plaintiffs are able prove that the County violated Section 207(o)(5)'s requirements (which they are not), then Plaintiffs are entitled to recover monetary payment for the unused compensatory time that he/she has accrued in lieu of statutory overtime. An employer who violates the FLSA is liable for unpaid overtime compensation and may also be liable for an equal amount of liquidated damages (which, in this case, would entail paying out double Plaintiffs' compensatory time balances). 29 U.S.C. § 216(c). Liquidated damages may be reduced or eliminated if the employer shows that the act or omission giving rise to its FLSA violation was in good faith and that the employer had reasonable grounds for believing that its act or omission was not in violation of the FLSA. 29 U.S.C. § 260.

Here, in the unlikely event that Plaintiffs prove a violation of the FLSA, the County will be able to establish that it had a good faith belief that its actions were in compliance with the law. The County is and was aware of Section 207(o)(5)'s requirements, and it has – and continues to – take steps to ensure it complies with those requirements. As discussed, the County has granted the vast majority of Plaintiffs' compensatory time requests. Moreover, through the COSS system, Plaintiffs were always able to use their compensatory time within a reasonable period. On the limited occasions a request was denied, the County denied the request pursuant to a system designed to preserve minimum staffing levels and avoid undue disruption to the Jail operations. The County performed an extensive analysis to determine how many time off requests can receive advance approval while ensuring that minimum staffing levels will be met. The County has every reason to believe its actions are in full compliance with the law. In the unlikely event that a jury disagrees, liquidated damages are not warranted.

1283373.1

## VI.    Evidentiary Issues.

### A.    Plaintiffs Must Be Barred From Introducing Evidence From Outside the Relevant Time Period.

#### 1.    The Relevant Time Period for Plaintiffs' Claims is April 12, 2012 or June 24, 2012 through the Present.

To determine the time period relevant to Plaintiffs' claims, it is necessary to review when Plaintiffs' claims were filed and the applicable statute of limitations. Plaintiffs Newman and Werth filed the original complaint in this matter on April 16, 2014. The FLSA provides for a two-year period of damages. 29 U.S.C. § 255(a); *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 141 (2d Cir. 1999). As such, the relevant time period for the claims of Plaintiffs Newman and Werth is April 16, 2012 through the present. Plaintiffs Haner and Shawver were not parties to this matter (and, thus, asserted no claims in this matter) until being named in the Amended Complaint, which was filed on June 24, 2014. Therefore, the relevant time period for their claims is June 24, 2012 through the present.

The FLSA's statute of limitations may be extended by one year only if, and when, Plaintiffs prove, by a preponderance of the evidence, that the County willfully violated the law. *See Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) ("The plaintiff bears the burden of proof on the issue of willfulness for statute of limitations purposes."). To establish willfulness, Plaintiffs must prove that the County knew or showed reckless disregard for whether their conduct was prohibited by the FLSA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (stating that "willful" standard requires a showing "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]"). "If an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *Parada v. Banco Indus. de Venez.*, 753

F.3d at 71. Here, even if Plaintiffs could prove a violation of the FLSA (which they cannot), they certainly cannot prove that the County acted willfully.

As set forth above, the County has granted the vast majority of Plaintiffs' compensatory time requests. The County's seldom denials of Plaintiffs' requests were not willful. They were based on a thorough analysis of a number of factors used to determine how many time off requests can be given advance approval for a specific day while avoiding undue disruption to Jail operations. The County took steps to ensure that, when it denied a compensatory time request, it did so in compliance with the FLSA's requirements. In the unlikely event that the jury disagrees with the lawfulness of the County's actions, there is absolutely no basis to conclude that the County "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." As a result, only the FLSA's standard, two-year period of damages for non-willful violations can possibly apply to this case, and the relevant time period runs from April 16, 2012 (for the claims of Plaintiffs Newman and Werth) or June 24, 2012 (for the claims of Plaintiffs Haner and Shawver) through June 24, 2014.

**2.      Evidence from Outside the Relevant Time Period Must Be Excluded.**

Plaintiffs must be barred from introducing evidence at trial related to requests, usage, denials, or the availability of compensatory time from outside the relevant time period applicable to Plaintiffs' claims. Because Plaintiffs have previously sought to rely on such evidence, a ruling in advance of trial is needed.

Indeed, in connection with their summary judgment motion, and in response to the County's motion, Plaintiffs relied upon evidence from well outside any relevant time period possibly applicable to this case. For example, Plaintiffs submitted and relied upon a September 10, 2010 e-mail from Jail Sergeant Surman related to the number of days that remained available

for time off usage for the remainder of 2010. This e-mail has no relevance to this matter as it is from outside any time period possibly relevant to this matter.

The claim here alleges a violation of Section 207(o)(5). That statute sets forth requirements related to an employer's handling of **specific requests** submitted by employees. Evidence from outside the relevant time period has no relevance to the handling of specific requests submitted during the relevant time period. Accordingly, Plaintiffs must be barred from submitting evidence at trial from outside the relevant time periods of April 16, 2012 through the present (for the claims of Plaintiffs Newman and Werth) or June 24, 2012 through the present (for the claims of Plaintiffs Haner and Shawver).

> **B.    Plaintiffs Must Be Barred From Introducing Testimony Regarding "Hypothetical" Compensatory Time Requests.**

During his deposition, Plaintiff Werth claimed that he had been told by unidentified Jail sergeants that, if a day is unavailable for advance approval for time off, then he should not request time off on that date because the request will not be granted. In the Report and Recommendation, Magistrate Roemer relied on this testimony to erroneously find that Plaintiff Newman, who has no denied compensatory time requests during the relevant time period, could still potentially assert a claim when the evidence was construed "in the light most favorable to plaintiffs." R&R, p. 23. This conclusion was entirely wrong. Magistrate Roemer relied on evidence that is irrelevant, prejudicial, and inadmissible. Any attempt by Plaintiffs to rely on such evidence at trial must be rejected.

As discussed, Section 207(o)(5) specifically states that an employee "who has **requested** the use of…compensatory time" must be permitted to do so within a reasonable period unless there is an undue disruption. The requirements of Section 207(o)(5) are not triggered unless and until **a request** to use compensatory time has been made. *See* 29. U.S.C. 207(o)(5). Plaintiffs

1283373.1

have the burden to show that they submitted requests to use compensatory time. They cannot establish a claim based on testimony that they declined to submit a request because they knew it would be denied. Evidence of such hypothetical requests is insufficient and irrelevant. Further, such evidence is prejudicial to the County and invites jury nullification of the statutory prerequisite that a request be made before the employer's obligations under Section 207(o)(5) are triggered. Accordingly, it must be barred pursuant to Rule 403 of the Federal Rules of Evidence.

## CONCLUSION

Plaintiffs' sole claim in this matter – that the County violated Section 207(o)(5) – has absolutely no evidence to support it. They cannot satisfy their burden of proving a violation of the statute's requirements.

The County fulfills the fundamental requirements of the FLSA. It makes overtime compensation available to Plaintiffs (and all other Corrections Officers) immediately after they work overtime hours. If Plaintiffs opt to accept compensatory time and later want their overtime pay in cash, they can obtain it quarterly by cashing in their accrued but unused compensatory time.

Setting that aside, when Plaintiffs choose to hold onto their compensatory time, they have been able to make use of it on the exact day they request off the overwhelmingly majority of the time. Plaintiffs cannot prove otherwise. Regarding the seldom occasions when Plaintiffs had a request denied, they also cannot prove that they were unable to use their compensatory time within a reasonable period of the date they requested – but were denied – time off.

Even if they could meet their burden of proof with respect to those issues, they still would be unable to prevail on their claims in this matter. That is because, on the limited occasions they have had a compensatory time request denied, it was denied pursuant to a system designed to preserve staffing levels at the Jail. Falling below minimum staffing levels **at a Jail** is

38                                                                                      1283373.1

extremely unsafe and detrimental to operations. There can be no doubt that it constitutes an "undue disruption" to the County.

Plaintiffs clearly want to dictate exactly when they are permitted to use their compensatory time. They want to force the County to approve each and every request they submit no matter the impact on the operations of the Jail. That is simply not possible, and it is in no way required by the FLSA.

Section 207(o)(5) states that the County must permit the use of compensatory time within a reasonable period of the date requested unless it would cause an undue disruption. The County complies with those requirements. Plaintiffs cannot prove otherwise. Therefore, they will not be able to prevail at trial.

Dated:      Buffalo, New York
             September 13, 2017

                                    **BOND SCHOENECK & KING PLLC**

                                    By:      s/Melinda G. Disare
                                             Melinda G. Disare, Esq.
                                             Michael E. Hickey, Esq.
                                             *Attorneys for Defendant*
                                               *County of Niagara*
                                             Avant Building – Suite 900
                                             200 Delaware Avenue
                                             Buffalo, New York  14202-2107
                                             (716) 416-7000
                                             mdisare@bsk.com

1283373.1